# STATE EX REL. JOHN SHAPIRO v. JOHN P. WALL.[1]

October 28, 1932.

No. 29,313.

*E. S. Cary* and *Benjamin M. Rigler,* for relator.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, *Edward J. Goff,* County Attorney, and *Charles E. Goldblum,* Assistant County Attorney, for respondent.

[1]Reported in 244 N. W. 811.

Loring, J.

In July, 1925, the relator was indicted in the state of Illinois for an offense committed therein in January of that year. He was later indicted by the federal court in that state for another offense and tried and convicted thereof. He was sent to the federal prison at Leavenworth, Kansas, and while he was serving the sentence imposed by the federal court he was removed by the federal authorities to the state of Illinois at the request of the Illinois authorities and there tried for the offense against the state. After his conviction he was returned to Kansas to finish his term in the federal penitentiary. Upon his discharge from that prison he was arrested at the request of the governor of Illinois upon an extradition warrant and held by the Kansas authorities. He thereupon sued out a writ of habeas corpus and was thereunder discharged from custody upon the theory that he was not a fugitive from justice and could not, under the federal constitution and acts of congress, be returned to Illinois. The case was appealed to the district court in Kansas, which in turn reached a like decision. The relator then removed to this state and was again arrested upon a rendition warrant and again sued out a writ of habeas corpus, which was discharged in the district court of Hennepin county. The case is here upon appeal to be tried de novo.

The relator raises two questions: First, that he is not a fugitive from justice; and, second, that the decision of the Kansas court to that effect is res adjudicata and binding upon us.

The relator contends that inasmuch as he was taken from the state of Illinois to the state of Kansas on both occasions by force and has not since been within the boundaries of the state of Illinois he is not a fugitive and that he has a safe and permanent asylum in this state. The second paragraph of art. IV, § 2, of the constitution of the United States provides:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

R. S. § 5278, now 18 USCA, § 662, makes provision for putting this part of the constitution into effect. Has the relator fled from justice in the sense that the words are used by the framers of the constitution and in the acts of congress? In the construction of these provisions we are bound by the views of the Supreme Court of the United States. In the case of Appleyard v. Massachusetts, 203 U. S. 222, 227, 228, 27 S. Ct. 122, 123, 51 L. ed. 161, 7 Ann. Cas. 1073, that court said:

"So that the simple inquiry must be whether the person whose surrender is demanded is in fact a fugitive from justice, not whether he *consciously* fled from justice in order to avoid prosecution for the crime with which he is charged by the demanding State. A person charged by indictment or by affidavit before a magistrate with the commission within a State of a crime covered by its laws, and who, after the date of the commission of such crime leaves the State—no matter for what purpose or with what motive, nor under what belief—becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another State must be delivered up by the Governor of such State to the State whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the Governor of the State from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any State. The constitutional provision relating to fugitives from justice, as the history of its adoption will show, is in the nature of a treaty stipulation entered into for the purpose of securing a prompt and efficient administration of the criminal laws of the several States—an object of the first concern to the people of the entire country, and which each State is bound, in fidelity to the Constitution, to recognize. A faithful, vigorous enforcement of that stipulation is vital to the harmony and welfare of the States. And while a State should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the

provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State."

In the case of Roberts v. Reilly, 116 U. S. 80, 97, 6 S. Ct. 291, 300, 29 L. ed. 544, the court held one to be a fugitive from justice who has committed a crime within a state and "when he is sought to be subjected to its criminal process to answer for his offense, he has left its jurisdiction and is found within the territory of another." Our own court in State ex rel. Burner v. Richter, 37 Minn. 436, 438, 35 N. W. 9, 10, speaking through Mr. Justice Mitchell, in regard to Roberts v. Reilly, 116 U. S. 80, 97, 6 S. Ct. 291, 300, 29 L. ed. 544, said:

"The meaning of this language is unmistakable, viz.: That the motives or purposes of the party in leaving the state where the crime was committed are entirely immaterial; that all that is necessary to constitute him a fugitive from justice is (1) that, being within a state, he there committed a crime against its laws, and (2) when required to answer its criminal process, he has left its jurisdiction, and is found in the territory of another state.

"This construction fully accords with our own views. The sole purpose of this statute, and of the constitutional provision which it was designed to carry into effect, was to secure the return of persons who had committed crime within one state, and had left it before answering the demands of justice. The important thing is not their purpose in leaving, but the fact that they had left, and hence were beyond the reach of the process of the state where the crime was committed. Whether the motive for leaving was to escape prosecution or something else, their return to answer the charges against them is equally within the spirit and purpose of the statute; *and the simple fact that they are not within the state to answer its criminal process, when required, renders them, in legal intendment, fugitives from justice, regardless of their purpose in leaving."*

It is true that these cases do not involve fugitives who have been forcibly taken from the jurisdiction of the demanding state, and

that In re Whittington, 34 Cal. App. 344, 167 P. 404, holds that such a person is not a fugitive from justice; but we believe that the manner of leaving the demanding state is as immaterial as is the purpose of leaving, and that the framers of the constitution could not have intended to create a permanent asylum for a criminal if he was taken out of the demanding state by force and against his will. If his leaving the state under such circumstances that it would not ordinarily be called a flight makes no difference in the eyes of the Supreme Court, or if his lack of consciousness that he has committed an offense within the demanding state makes no difference, we cannot see that the manner of his leaving should be controlling in such a matter. He has left the jurisdiction of the demanding state and is found in the territory of another state, whence he refuses to return to satisfy the charges made against him. We believe that this satisfies the definition of a fugitive from justice under the decisions of the Supreme Court and under our own decision. We think the manifest purpose of the constitutional provision and of the acts of congress in furtherance thereof is to effect the return of absentee criminals or those charged with crime, and that these provisions should receive a liberal construction to carry out that manifest purpose, which in our view includes a design to prevent the frustration of criminal procedure by the departure of a person in any manner from the jurisdiction where he is charged with crime.

Extradition treaties to which the United States is a party define a fugitive from justice as one who has sought an asylum or who "shall be found" within the territory of a party to the treaty. 2 Moore, Extradition, § 578. In our opinion, a departure from the state, regardless of the manner of its accomplishment, must be regarded for the purposes of extradition as a flight within the meaning of the constitutional and statutory provisions.

■ Counsel have cited us to no authorities which hold that the discharge of a prisoner upon habeas corpus in one state is binding upon the authorities in another state when the same prisoner is again sought for the same offense in extradition proceedings. The

laws of Kansas are not before us, and consequently we must assume that the common law prevails there and that it is the same as our own common law unaffected by statute. Beard v. C. M. & St. P. Ry. Co. 134 Minn. 162, 158 N. W. 815. Before an appeal was provided to this court by statute, successive applications for writs of habeas corpus were permitted. In re Snell, 31 Minn. 110, 16 N. W. 692. We do not determine whether that rule still prevails here. It is sufficient that we give the Kansas decision only the same force that it has there. At common law relator might have had successive writs. Therefore we are at liberty to assume that he might have them in Kansas and that the decision was not res adjudicata in the courts of that state.

In the case of Kurtz v. State, 22 Fla. 36, 1 A. S. R. 173, a fugitive from the state of New York was sought in extradition proceedings. He was released upon a writ of habeas corpus and later rearrested. He then sued out another writ, upon which the court refused to discharge him. It was contended upon appeal that the discharge under the first writ was in effect res adjudicata and that he could not again be arrested under the same charge. The court says [22 Fla. 45]:

"No case brought to our attention has decided that the principle applies where the discharge of the prisoner was from the custody of an officer holding him by virtue of a warrant of a resident Governor, upon the requisition of the Governor of the State from which he had fled. * * * The courts in a Habeas Corpus proceeding of this kind, where the prisoner is arrested for extradition, cannot go into a trial of the merits of the cause. The proceeding is only an initiatory step to a trial in another State. As to the guilt of the prisoner, they are not allowed to inquire. Their judicial powers are limited to a determination on the sufficiency of the papers and the identity of the prisoner. If the prisoner is discharged, it will not absolve him from being re-arrested on a new warrant issued by the governor."

See also Commonwealth v. Hall, 9 Gray, 262, 69 Am. D. 285, and State ex rel. Hebert v. Coleman, 3 Tenn. Civ. App. 316, 324.

It may also be said that the particular issue before the Kansas court was the legality of the restraint there imposed upon the relator. Here it is the restraint imposed upon him by the sheriff of Hennepin county, a wholly different matter but involving the same issue as to flight from Illinois.

It is our opinion that the discharge under the writ of habeas corpus in Kansas is not res adjudicata in this proceeding.

The writ of habeas corpus is discharged and the prisoner remanded to the custody of the sheriff of Hennepin county for disposition under the rendition warrant.