STATE EX REL. ROBERT DuFAULT v. LEO F. UTECHT.[1]

July 27, 1945.

No. 34,066.

*Bert A. Minwegen,* for appellant (relator below).

*J. A. A. Burnquist,* Attorney General, and *Ralph A. Stone* and *William C. Green,* Assistant Attorneys General, for respondent.

MAGNEY, JUSTICE.

On January 9, 1940, an information was filed in the district court of Carlton county charging Robert DuFault, the relator, with the crime of robbery in the second degree. He was tried, found guilty, and sentenced to the state penitentiary at Stillwater. Respondent is the warden of that institution. Prior thereto, relator had served one term in the state reformatory at St. Cloud and one at the penitentiary at Stillwater.

[1]Reported in 19 N. W. (2d) 706.

On February 2, 1943, relator filed a petition for a writ of *habeas corpus* in the district court of Washington county. On April 1, 1943, that court granted respondent's motion to quash and remanded the prisoner. Again, on February 27, 1945, a second writ of *habeas corpus* was issued. In each petition the same grounds were urged.

Relator alleges that his imprisonment is illegal because he is an Indian and a member of the Chippewa Indian tribe and that the crime of which he was convicted was committed upon an Indian allotment for which a trust patent had been issued. He claims that because of these facts the district court of Carlton county had no jurisdiction to try and punish him. The warrant of commitment is printed as a part of the return, and attached thereto are a copy of the indictment, the verdict of guilty, the judgment of conviction and sentence, and the minutes of the proceedings with transcript of the questions asked and the answers given at the time of sentence. The return alleges that the court had determined the same questions as are now raised upon the first *habeas corpus* proceeding and that the matters attempted to be raised in the instant case are *res judicata*. The answer to the return realleges the facts claimed by relator as to his membership in the Chippewa tribe, that the crime was committed upon trust patent land, and that he did not know of this until after his trial.

Respondent moved for an order quashing the writ and remanding relator to his custody as warden of the state prison. The court quashed the writ, and relator appeals to this court.

It is relator's contention that the Carlton county district court was without jurisdiction of the person and subject matter, and thus without authority to render judgment against him for the crime charged, such jurisdiction being vested exclusively in the United States and the proper federal court, and that consequently the judgment of the state district court is null and void and relator's imprisonment illegal.

The facts set out in petitioner's application for the writ of *habeas corpus,* if true, would deprive the state courts of jurisdiction in

this matter. A state's jurisdiction does not extend over individual members of an Indian tribe in so-called "Indian country." State v. Jackson, 218 Minn. 429, 16 N. W. (2d) 752. The jurisdiction of state courts does extend over "Indian country" except as limited by Indian treaties or federal laws. They have the power to prosecute white persons or nontribal Indians for crimes committed upon Indian reservations. State v. Jackson, *supra*.

In the original proceedings before the district court of Carlton county, there is no reference to the fact that the place where the crime was committed was within an Indian reservation on an Indian allotment, and no reference to the fact that relator is a member of the Chippewa tribe of Indians and a ward of the government, except that at the pre-sentence examination relator was asked by the court:

"Q. Let's see. Do you belong to the Chippewa tribe?

"A. Yes.

"Q. And you get allowances from the Government, the same as the other Chippewas do?

"A. Yes."

A motion to quash the writ amounts to a demurrer to the petition. 25 Am. Jur., Habeas Corpus, § 136. Solely for the purpose of testing their sufficiency in law, a demurrer admits the material or issuable facts well pleaded. The same is true of a motion to quash. In the instant case, therefore, respondent admits, for the purpose of testing their sufficiency, the facts that relator is a member of the Fond du Lac tribe of Minnesota Chippewa Indians; that he is a ward of the government; that the crime for which he was convicted was committed on an Indian allotment within the Fond du Lac Indian reservation. In his return, respondent sets out facts which he contends do not entitle relator to a release under the writ, irrespective of the facts set out in the petition and the answer to the return.

In these proceedings relator is attacking collaterally the judgment of conviction under which he is now confined in the penitentiary. He claims that the state district court of Carlton county

lacked jurisdiction to hear the matter and enter judgment therein; that the federal courts have exclusive jurisdiction.

The district court of Carlton county has jurisdiction of crimes committed in that county. It is a court of general jurisdiction. The relator had entered a plea of not guilty. The case was tried to a jury, which convicted. Relator was represented by counsel throughout, except on the pre-sentence examination. He did not plead want of jurisdiction on the part of the state court, nor were the facts upon which he now bases his claim of lack of jurisdiction called to the attention of the court and jury during the trial. There is nothing in the record to indicate that the court did not have jurisdiction over the offense and the person of relator. The information charges, and the judgment of conviction establishes, the fact that the offense was committed in Carlton county. No appeal was taken from the judgment of conviction in the state court. Relator now contends that in these proceedings under writ of *habeas corpus* he can attack the judgment collaterally by raising issues which he could and should have raised in the state district court.

In 39 C. J. S., Habeas Corpus, § 16, p. 456, the rule is stated thus:

"In ascertaining a jurisdictional fact the court will pursue its inquiry through the record of the proceedings, and where the court is one of general jurisdiction, habeas corpus can be invoked only where lack of jurisdiction appears on the face of the record, * * *."

In 25 Am. Jur., Habeas Corpus, § 26, p. 161, the general rule is stated as follows:

"* * * The tendency of the courts is to hold that unless the lack of jurisdiction appears clearly upon the face of the record, habeas corpus ought not to be granted to review an erroneous determination by a court that it has territorial jurisdiction over an offense, but that in the absence of exceptional circumstances calling for the issuance of the writ, and subject always to the discretion of the court to issue the writ where justice so demands, an appli-

cant for habeas corpus, in such a case, will be left to his remedy by writ of error or appeal."

In State ex rel. Slayton v. Whittier, 108 Minn. 447, 122 N. W. 319, this court held that a judgment entered in proceedings under L. 1905, c. 285, authorizing the committal of incorrigible minors to the state training school, which recites all the jurisdictional facts, cannot be impeached or contradicted collaterally on a writ of *habeas corpus*. That case cited State ex rel. Noonan v. Sheriff of Hennepin County, 24 Minn. 87; State ex rel. Schulman v. Phillips, 73 Minn. 77, 75 N. W. 1029; and State ex rel. Bales v. Bailey, 106 Minn. 138, 118 N. W. 676, 19 L.R.A.(N.S.) 775, 130 A. S. R. 592, 16 Ann. Cas. 338. And in State ex rel. Jackson v. McDonald, 112 Minn. 428, 128 N. W. 454, this court stated:

"It is clear that, inasmuch as it affirmatively appears that the court had jurisdiction of the offense charged and of the relator, its judgment and proceedings cannot be impeached on habeas corpus."

The court there distinguished the case of State ex rel. Sheehy v. Bates, 96 Minn. 150, 104 N. W. 890, by saying that in that case the defect in the proceedings there complained of appeared on the face of the record.

In State ex rel. Newman v. Wall, 189 Minn. 265, 266, 249 N. W. 37, 38, the rule was again stated:

"We do not permit a writ of habeas corpus to be used as substitute for writ of error or appeal. It may not be made a cover for collateral attack on a judgment of conviction."

In State ex rel. Dunlap v. Utecht, 206 Minn. 41, 44, 287 N. W. 229, 231, the court, after stating that the judgments of conviction were fair on their face and imported regularity, said:

"The question now arises whether the relator may by *habeas corpus* at this late date raise and test the question as to whether there was double jeopardy. *Habeas corpus* is an independent proceeding to enforce a civil right and therefore is a collateral attack

upon a criminal judgment. Riddle v. Dyche, 262 U. S. 333, 336, 43 S. Ct. 555, 67 L. ed. 1009, 1011; State ex rel. Beekley v. McDonald, 123 Minn. 84, 86, 142 N. W. 1051; State ex rel. Shapiro v. Wall, 187 Minn. 246, 244 N. W. 811, 85 A. L. R. 114; State ex rel. Slayton v. Whittier, 108 Minn. 447, 449, 122 N. W. 319; State ex rel. Nielsen v. Gibbons, 199 Minn. 445, 271 N. W. 873; Goto v. Lane, 265 U. S. 393, 401, 44 S. Ct. 525, 527, 68 L. ed. 1070, 1074. Its history indicates that it arose out of the necessity of protecting the citizen against lack of due process. Holdsworth, *Some Lessons From Our Legal History*, p. 59, *et seq.*

"The writ may not be used as a substitute for a writ of error or appeal, or as a cover for a collateral attack upon a judgment of a competent tribunal which had jurisdiction of the subject matter and of the person of the defendant. Nor does the fact that petitioner has permitted the time to elapse for an appeal or writ of error give him a right to *habeas corpus* as a substitute. In Goto v. Lane, *supra,* where, upon *habeas corpus* it was contended that the indictment did not charge a public offense and that there was no due process, the court said [265 U. S. 401, 44 S. Ct. 527, 68 L. ed. 1070]:

" 'The remedy is an extraordinary one, out of the usual course, and involves a collateral attack on the process or judgment constituting the basis of the detention. The instances in which it is granted, when the law has provided another remedy in regular course, are exceptional and usually confined to situations where there is peculiar and pressing need for it or where the process or judgment under which the prisoner is held is wholly void.

" 'This case does not measure up to that test. The circuit court in which the petitioners were tried and convicted undoubtedly had jurisdiction of the subject matter and of their persons, and the sentence imposed was not in excess of its power. The offense charged was neither colorless nor an impossible one under the law. The construction to be put on the indictment, its sufficiency and the effect to be given to the stipulation were all matters the determination of which rested primarily with that court. If it

erred in determining them, its judgment was not for that reason void, Ex parte Watkins, 3 Pet. 193, 203, 7 L. ed. 650, 653; Ex parte Parks, 93 U. S. 18, 20, 23 L. ed. 787, 788; Ex parte Yarbrough, 110 U. S. 651, 654, 4 S. Ct. 152, 28 L. ed. 274, 275, but subject to correction in regular course on writ of error. *If the questions presented involved the application of constitutional principles, that alone did not alter the rule.* Markuson v. Boucher, 175 U. S. 184, 44 L. ed. 124, 20 Sup. Ct. Rep. 76. And, if the petitioners permitted the time within which a review on writ of error might be obtained to elapse and thereby lost the opportunity for such a review, *that gave no right to resort to habeas corpus as a substitute.* Riddle v. Dyche, 262 U. S. 333, 67 L. ed. 1009, 43 Sup. Ct. Rep. 555. And see Craig v. Hecht, 263 U. S. 255, 68 L. ed. 293, 44 Sup. Ct. Rep. 103.' "

Many cases have arisen in the federal courts involving the question which we must now determine.

In In re Lincoln (1906) 202 U. S. 178, 26 S. Ct. 602, 50 L. ed. 984, a judgment of conviction in a federal court under an indictment for unlawfully introducing intoxicating liquor into an Indian reservation was held not subject to review by the United States Supreme Court on *habeas corpus* on the ground that the United States and its tribunals had no jurisdiction over the reservation in question, where the error, if any, could have been corrected by a writ of error, and no reason was given why that remedy was not pursued. In reaching this result, the court said (202 U. S. 182, 26 S. Ct. 603, 50 L. ed. 986):

"'* * * the ordinary procedure for the correction of errors in criminal cases is by writ of error, and that method should be pursued unless there be special circumstances calling for a departure therefrom."

Ex parte Cuddy, 131 U. S. 280, 9 S. Ct. 703, 33 L. ed. 154, held that when a judgment of a circuit or district court of the United States is attacked collaterally every intendment must be made in

support of jurisdiction, unless the want of it, either as to subject matter or as to parties, appears in some proper form.

Toy Toy v. Hopkins, 212 U. S. 542, 29 S. Ct. 416, 53 L. ed. 644, is a leading case. Toy Toy and Columbia George, both Indians of the Umatilla tribe, were separately tried and convicted in a state court of Oregon for the crime of murdering an Indian woman on the United States Indian reservation in Umatilla county, Oregon. George appealed from the judgment of conviction on the ground, among others, that the state court was without jurisdiction, inasmuch as the crime was committed by Indians upon an Indian on an Indian reservation, and that it was therefore within the exclusive jurisdiction of the federal courts. The supreme court of Oregon upheld this contention, reversed the judgment of the trial court, and ordered the discharge of the defendant George. Toy Toy did not appeal. Thereupon Toy Toy and George were indicted in the United States court for the district of Oregon, tried, and convicted of murder. An application was made by the defendants to the Supreme Court of the United States for leave to file a petition for writ of *habeas corpus,* which was denied. (201 U. S. 641, 26 S. Ct. 759, 50 L. ed. 901.) Thereafter a petition for writ of *habeas corpus* on behalf of Toy Toy only was filed in the circuit court for the western district of Washington. That court denied the petition, and defendant appealed. The court said (212 U. S. 547, 29 S. Ct. 416, 53 L. ed. 646) :

"The indictment in this case charged Columbia George and Toy Toy, Indians, with the murder of Annie Edna, an Indian woman, upon the Umatilla Reservation within the State and District of Oregon.

"On the face of the record the United States Circuit Court for the District of Oregon, in which these Indians were last tried and convicted, had jurisdiction of the offense and of the defendants. They were tried, found guilty and sentenced to the penitentiary for life. Five years thereafter Toy Toy applied for the writ of *habeas corpus,* and alleged that the indictment, arraignment, trial, judgment, sentence and commitment were wholly null and void for

want of jurisdiction over subject-matter and person. The petition alleged:

" 'That the place where said Annie Edna was killed was a tract of land which had once been a part of the Umatilla Indian Reservation, in the State of Oregon, but that long prior to and at the time of the death of the said Annie Edna the said tract of land had been allotted to one Tatzhammer, and a patent for the said land had been duly issued to her, by the United States, as a member of the Umatilla tribe of Indians. And that the said premises whereon said Annie Edna was killed, by reason of said allotment and patent, ceased to be Indian country and ceased to be a part of the said Umatilla Indian Reservation in Oregon. That on the 16th day of September, 1899, your petitioner, who was prior thereto a member of the Umatilla tribe of Indians, received an allotment of land from what had theretofore been a part of the Umatilla Indian Reservation in Oregon, and received from the United States a preliminary patent for said allotment, and by reason of said allotment and patent of land, * * * your petitioner became, and at the time of the killing of the said Annie Edna * * * was, and at all times since has been a citizen of the United States and of the State of Oregon, and subject to its laws.

" 'Your petitioner further states that he was born within the territorial limits of the United States, and that at the time of the killing of the said Annie Edna your petitioner had voluntarily taken up within the limits of the United States his residence, separate and apart from the Umatilla tribe of Indians, and had adopted the habits of civilized life, * * *.'

"If such were the facts, and they made out a want of jurisdiction under the applicable statutes, which on the merits we do not hold, the Circuit Court, nevertheless, was authorized to hear and pass upon those questions in the first instance, and its decision was open to review in the appellate court by writ of error. But it could not be attacked collaterally as absolutely void, and *habeas corpus* cannot be availed of as a writ of error.

*     *     *     *     *

" 'Jurisdiction as to the subject-matter may be limited in various ways, as to civil and criminal cases; cases at common law or in equity or in admiralty; probate cases, or cases under special statutes; to particular classes of persons; to proceedings in particular modes; and so on. In many cases jurisdiction may depend on the ascertainment of facts involving the merits, and in that sense the court exercises jurisdiction in disposing of the preliminary inquiry, although the result may be that it finds that it cannot go farther. And where, in a case like that before us, the court erroneously retains jurisdiction to adjudicate the merits, its action can be corrected on review.' "

In Rodman v. Pothier, 264 U. S. 399, 44 S. Ct. 360, 68 L. ed. 759, it was held that, where a person was held for removal under an indictment charging murder on a military reservation under the exclusive jurisdiction of the United States and the existence of such exclusive jurisdiction involved consideration of many facts and seriously controverted questions of law, the determination of that issue was for the court where the indictment was found and was not open for decision in another district in *habeas corpus*.

In Bowen v. Johnston, 306 U. S. 19, 25-27, 59 S. Ct. 442, 445-446, 83 L. ed. 455, 460-461, the court said:

"Where on the face of the record the District Court has jurisdiction of the offense and of the defendant and the defendant contends that on the facts shown the crime was not committed at a place within the jurisdiction of the United States, we have held that the judgment is one for review by the Circuit Court of Appeals in error proceedings and that the writ of *habeas corpus* is properly refused. Toy Toy v. Hopkins, 212 U. S. 542, 549, 29 S. Ct. 416, 417, 53 L. ed. 644. And, on removal proceedings, we have observed that in a case where the question 'whether the *locus* of the alleged crime was within the exclusive jurisdiction of the United States demands consideration of many facts and seriously controverted questions of law,' these matters 'must be determined by the court where the indictment was found' and that 'the regular course

may not be anticipated by alleging want of jurisdiction and demanding a ruling thereon in a *habeas corpus* proceeding.' Rodman v. Pothier, 264 U. S. 399, 402, 44 S. Ct. 360, 361, 68 L. ed. 759. See, also, Henry v. Henkel, 235 U. S. 219, 229, 35 S. Ct. 54, 57, 59 L. ed. 203. On the same principle, in Walsh v. Archer (9 Cir.) 73 F. 2d 197, where the indictment charged murder committed on board a vessel on the high seas, the court affirmed an order dismissing a petition for *habeas corpus,* it being contended that the vessel at the time of the commission of the crime was within the State of California and under its jurisdiction, saying—'Whether the location of the alleged crime was upon the high seas and exclusively within the jurisdiction of the United States required consideration of many facts and seriously controverted questions of law, including the alleged error involving the jurisdiction of the court.' *Id.,* p. 199.

"But the rule, often broadly stated, is not to be taken to mean that the mere fact that the court which tried the petitioner had assumed jurisdiction, necessarily deprives another court of authority to grant a writ of *habeas corpus.* As the Court said in the case of Coy, 127 U. S. at pp. 757, 758, 8 S. Ct. 1263, 32 L. ed. 274, *supra,* the broad statement of the rule was certainly not intended to go so far as to mean, for example, 'that because a federal court tries a prisoner for an ordinary common law offence, as burglary, assault and battery, or larceny, with no averment or proof of any offence against the United States, or any connection with a statute of the United States, and punishes him by imprisonment, he cannot be released by *habeas corpus* because the court which tried him had assumed jurisdiction.' Despite the action of the trial court, the absence of jurisdiction may appear on the face of the record (see In re Snow, 120 U. S. 274, 7 S. Ct. 556, 30 L. ed. 658, *supra;* Hans Nielsen, Petitioner, 131 U. S. at p. 183, 9 S. Ct. 672, 33 L. ed. 118, *supra*) and the remedy of *habeas corpus* may be needed to release the prisoner from a punishment imposed by a court manifestly without jurisdiction to pass judgment.

"It must never be forgotten that the writ of *habeas corpus* is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired. Ex parte Lange, 18 Wall. 163, 21 L. ed. 872, *supra*. The rule requiring resort to appellate procedure when the trial court has determined its own jurisdiction of an offense is not a rule denying the power to issue a writ of *habeas corpus* when it appears that nevertheless the trial court was without jurisdiction. The rule is not one defining power but one which relates to the appropriate exercise of power. It has special application where there are essential questions of fact determinable by the trial court. Rodman v. Pothier, 264 U. S. 399, 44 S. Ct. 360, 68 L. ed. 759, *supra*. It is applicable also to the determination in ordinary cases of disputed matters of law whether they relate to the sufficiency of the indictment or to the validity of the statute on which the charge is based. *Id.*; Glasgow v. Moyer, 225 U. S. 420, 32 S. Ct. 753, 56 L. ed. 1147, *supra;* Henry v. Henkel, 235 U. S. 219, 35 S. Ct. 54, 59 L. ed. 203, *supra*. But it is equally true that the rule is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent. Among these exceptional circumstances are those indicating a conflict between state and federal authorities on a question of law involving concerns of large importance affecting their respective jurisdictions. In re Lincoln, 202 U. S. 178, 182, 183, 26 S. Ct. 602-604, 50 L. ed. 984; Henry v. Henkel, 235 U. S. at pp. 228, 229, 35 S. Ct. at pp. 56, 57, 59 L. ed. 203, *supra*."

In Maust v. Warden (8 Cir.) (1922) 283 F. 912, 914, 915, where it was held that a white man convicted in a federal court within a state of murder committed on an Indian reservation within what was then a territory was not entitled to discharge on *habeas corpus,* on the ground of want of jurisdiction of the court, because the indictment did not disclose whether the person murdered was a white man or an Indian, the court said:

"* * * The petition for the writ charged that the court was without jurisdiction. There can be no doubt that a white man may

be indicted, prosecuted, tried, convicted and punished in a federal court sitting within a state, for the murder of an Indian committed within Indian country. Donnelly v. U. S., 228 U. S. 243, 33 Sup. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E, 710; U. S. v. Pelican, 232 U. S. 442, 34 Sup. Ct. 396, 58 L. Ed. 676. It may be conceded that an indictment charging such an offense against a white man might be successfully challenged in limine, if it did not appear that the one murdered was an Indian; but if it be not so charged and the indictment be not challenged, and it appear on the trial that the person murdered was an Indian, the United States court sitting within a state would have jurisdiction of the offense. It does not appear from this indictment that Bateman was not an Indian. But in either event, the question whether the trial court had or did not have jurisdiction on that account was one for its inquiry and determination. It had authority to hear and pass upon that question of fact, and its decision could have been reviewed by writ of error, but it cannot be attacked collaterally. Toy Toy v. Hopkins, 212 U. S. 542, 29 Sup. Ct. 416, 53 L. Ed. 644."

In Archer v. Heath (9 Cir.) 30 F. (2d) 932, 933, the court said:

"In considering the question thus presented we must bear in mind the nature of the attack upon the judgment of conviction and the wide distinction between a direct and a collateral attack. Where a judgment of a United States court is attacked directly by appeal, the judgment will be reversed, unless the jurisdictional facts appear some place in the record; but on a collateral attack, such as by habeas corpus, the judgment is presumptively valid, unless it appears affirmatively from the record that the court was without jurisdiction. This distinction has been repeatedly recognized by the Supreme Court, and it has been universally held that a petitioner is not entitled to a discharge on habeas corpus simply because the record of conviction fails to show affirmatively the jurisdiction of the court in which the conviction was had. Ex parte Cuddy, 131 U. S. 280, 9 S. Ct. 703, 33 L. Ed. 154; United States v. Pridgeon, 153 U. S. 48, 14 S. Ct. 746, 38 L. Ed. 631; Knewel v. Egan, 268 U. S. 442, 45 S. Ct. 522, 69 L. Ed. 1036."

In Head v. Hunter (10 Cir.) (1944) 141 F. (2d) 449, 451, it is stated:

"* * * The indictment having recited the essential jurisdictional facts and the contrary not being shown upon its face, the jurisdiction of the sentencing court cannot be collaterally impeached in a habeas corpus proceeding. Ex parte Cuddy, 131 U. S. 280, 9 S. Ct. 703, 33 L. Ed. 154; Archer v. Heath, 9 Cir., 30 F. 2d 932; Bowen v. Johnson, 9 Cir., 97 F. 2d 860; Hatten v. Hudspeth, 10 Cir., 99 F. 2d 501."

In Davis v. Johnston (9 Cir.) (1944) 144 F. (2d) 862, petitioner was convicted of murder in federal court. The jurisdiction of the federal court over the crime of murder committed in South Dakota was predicated upon the allegation that the crime was committed within an Indian reservation. The petition for *habeas corpus* was based upon the allegation that the store in which the robbery and murder occurred was not within an Indian reservation and consequently was not within the jurisdiction of the federal courts, because, as petitioner alleged, the land upon which the building was located had been allotted and patented to an Indian in severalty and thereafter sold to a white citizen. Petitioner claimed that the land was no longer within the reservation. His petition for release on *habeas corpus* was denied, and he appealed. The court in denying the petition said (144 F. [2d] 862):

"* * * The uniform rule is that where the jurisdiction of the court is in issue in the trial court and is dependent upon facts alleged, the finding of jurisdiction is conclusive on the parties in a collateral attack on the judgment on habeas corpus proceedings or otherwise.

"In appellant's petition he states that he did not object to the jurisdiction of the court in the trial of the criminal case for the reason, he now alleges that he was not aware of the fact that the store building in which the crime was committed was not within the reservation. The decision of the court in the criminal case

upon the factual question of jurisdiction is equally conclusive whether or not it was raised by the defendant."

In the instant case, petitioner claims he did not know at the time of the trial that the crime was committed on an Indian allotment on an Indian reservation.

In Hatten v. Hudspeth (10 Cir.) (1938) 99 F. (2d) 501, where a defendant was convicted in a federal district court under an indictment charging him with the commission of robbery on certain store premises in a village located within an Indian reservation, the place of the commission of the crime being alleged to be within the limits of the reservation and within the exclusive jurisdiction of the court, it was held that, on a collateral attack as by *habeas corpus*, a judgment is presumptively valid unless it appears affirmatively from the record that the court was without jurisdiction; also, the jurisdiction of the court having been established by the findings of the jury on all material issues raised under the indictment, that this determination was not subject to review on *habeas corpus*, upon the ground that, as a matter of fact, the store premises were located on land for which a patent had been issued to an individual Indian and which therefore was no longer within the exclusive jurisdiction of the United States.

In the note in 83 L. ed. p. 463, to Bowen v. Johnston, 306 U. S. 19, 59 S. Ct. 442, 83 L. ed. 455, it is stated:

"While, * * * the question whether habeas corpus will lie in the class of cases discussed herein depends upon several conflicting considerations, it seems, from a review of the cases in which the question has arisen, that the tendency of the courts is to hold that, unless the court's lack of jurisdiction is clear and indisputable from the face of the record, habeas corpus ought not to be granted to review an erroneous determination by a court that it has territorial jurisdiction over an offense, but that, in the absence of exceptional circumstances ɔcalling for the issuance of the writ, and subject always to the discretion of the court to issue the writ where justice so demands, an applicant for habeas corpus

in such a case will be left to his remedy by writ of error or appeal." (Citing cases.)

In the same note, on page 466, this rule is stated:

"Habeas corpus will not be issued as a substitute for a writ of error on behalf of one convicted in a Federal Circuit Court under an indictment charging the murder of one Indian by another upon an Indian reservation, on the ground that such court was without jurisdiction because in fact the accused was a citizen of the United States, and the place of the crime, by reason of allotment and patent, had ceased to be a part of the reservation. Toy Toy v. Hopkins (1909) 212 U. S. 542, 53 L. ed. 644, 29 S. Ct. 416. * * * The Toy Case was followed in Maust v. Warden (1922; C. C. A. 8th) 283 F. 912, holding that a white person convicted in a Federal court for murder on an Indian reservation was not entitled to have the court's jurisdiction reviewed on habeas corpus upon the ground that it did not appear from the indictment whether or not the person murdered was an Indian."

It seems fair to say that the federal and Minnesota cases cited and quoted hold that, unless the court's lack of jurisdiction is clear and indisputable from the face of the record, *habeas corpus* ought not to be granted to review an erroneous determination by a court that it has territorial jurisdiction over an offense, but that, in general, an applicant for *habeas corpus* in such a case will be left to his remedy by writ of error or appeal. The face of the record in the instant case does not clearly and indisputably disclose lack of jurisdiction on the part of the state district court of Carlton county.

■ Respondent also sets up *res judicata* in his return, and in his motion to quash the writ urges this as one of the grounds. On February 2, 1943, relator petitioned the district court of Washington county, the same court and the same judge whose ruling is here being reviewed, for a writ of *habeas corpus* directed to the warden of the state penitentiary, who is also the respondent here. A writ was ordered and issued, and respondent moved to quash.

The court on April 1, 1943, ordered the writ quashed and relator remanded to respondent. Notice of the filing of that order was served on relator's then counsel on April 7, 1943. No appeal was taken. The petition for the first writ raised the same jurisdictional question as is raised in this second petition. In both writs, the claim is made that the state court did not acquire jurisdiction, because relator is an Indian and the crime was committed on Indian territory, over which the federal courts had exclusive jurisdiction. In quashing the first writ, after full consideration, the court held that on a writ of *habeas corpus* the judgment of conviction could not be attacked collaterally; that the court could not retry or review the question of the jurisdiction of the state court; that jurisdiction depended upon certain facts, which were for the determination of the jury. The order quashing the writ was a final one and appealable, and no appeal was attempted or taken. The trial court in its memorandum stated:

"* * * In the first proceeding we determined that relator could not on a Writ of Habeas Corpus retry or review the question of the Carlton County Court's jurisdiction; that the jurisdiction depended upon certain facts which were for determination by the trial jury. In other words we held that the judgment of conviction could not be attacked collaterally. The order then made by us we hold to be a final order from which relator might have appealed. No appeal was attempted or taken. No motion was ever made to re-open the question determined by that order. Now relator claims the right to have the entire matter re-heard on a second Writ of Habeas Corpus."

The question presented thus is this: "Does relator have the right to have the matter reheard under a second writ of *habeas corpus?*"

At common law repeated applications for the writ might be made. The rule of *res judicata* did not apply. There was no provision under common law for an appeal or review. In an early Minnesota case, In re Snell, 31 Minn. 110, 16 N. W. 692, this court held that

a decision of one court or officer upon a writ of *habeas corpus,* refusing to discharge a prisoner, was not a bar to the issuance of another writ, based upon the same state of facts as the former writ, by another court or officer, or to a hearing or discharge thereupon. Mr. Chief Justice Gilfillan in a dissenting opinion stated (31 Minn. 114, 16 N. W. 694):

"* * * Notwithstanding some *dicta* in England, and some decisions in America following them, I think, when a party has been heard on *habeas corpus,* the decision is, until reversed, *res adjudicata* upon his right to a discharge on the facts then existing. There may be a reason for the contrary rule when no review can be had; but there is none in this state, where the party may always have the decision of the court of last resort by appeal, where the writ is not heard in the first instance in this court, or by *certiorari* if no appeal is given. If the decision be not conclusive, then the party may, as often as it is against him, even though it be the solemn decision of this court, apply again and again, either to the same court or officer rendering it, or to any other court or officer having authority to issue the writ; and, upon each application, notwithstanding repeated decisions even by the same court or officer, the writ must issue."

In State ex rel. Lembke v. Bechdel, 37 Minn. 360, 34 N. W. 334, 5 A. S. R. 854, the court held that an adjudication on the question of the right to the custody of an infant child, brought upon a writ of *habeas corpus,* may be pleaded as *res judicata.* In that decision Mr. Justice Mitchell stated:

"In Re Snell, 31 Minn. 110, (16 N. W. Rep. 692,) this court held that a decision, under one writ of *habeas corpus,* refusing to discharge a prisoner, is not a bar to the issuing of another writ, based upon the same state of facts, nor to a hearing and discharge thereon. While there is room for a difference of opinion, and, in fact, a conflict of decisions, upon this question, yet, in view of the origin, history, and purposes of this writ as a 'writ of liberty,'

we adopted this rule in this class of cases, in which the liberty of the citizen is the question directly involved."

In State ex rel. Shapiro v. Wall, 187 Minn. 246, 244 N. W. 811, 85 A. L. R. 114, the use of the writ of *habeas corpus* in extradition proceedings was involved. Relator, prior to his arrest in Minnesota, had been discharged from custody in Kansas under a writ of *habeas corpus*. This court said (187 Minn. 250, 244 N. W. 813, 85 A. L. R. 114):

"Counsel have cited us to no authorities which hold that the discharge of a prisoner upon habeas corpus in one state is binding upon the authorities in another state when the same prisoner is again sought for the same offense in extradition proceedings. The laws of Kansas are not before us, and consequently we must assume that the common law prevails there and that it is the same as our own common law unaffected by statute. Beard v. C. M. & St. P. Ry. Co. 134 Minn. 162, 158 N. W. 815, L. R. A. 1916F, 866. Before an appeal was provided to this court by statute, successive applications for writs of habeas corpus were permitted. In re Snell, 31 Minn. 110, 16 N. W. 692. We do not determine whether that rule still prevails here. It is sufficient that we give the Kansas decision only the same force that it has there. At common law relator might have had successive writs. Therefore we are at liberty to assume that he might have them in Kansas and that the decision was not res adjudicata in the courts of that state."

The federal courts have uniformly held that the common-law doctrine of *res judicata* does not extend to a decision on *habeas corpus*. But certain qualifications have been added. In Salinger v. Loisel, 265 U. S. 224, 230, 44 S. Ct. 519, 521, 68 L. ed. 989, 995, the Supreme Court states:

"* * * At common law the doctrine of *res judicata* did not extend to a decision on *habeas corpus* refusing to discharge the prisoner. The state courts generally have accepted that rule where not modified by statute; the lower federal courts usually have given effect to it; and this Court has conformed to it and thereby sanc-

tioned it, although announcing no express decision on the point. The cases of Carter v. McClaughry, 183 U. S. 365, 378, 22 S. Ct. 181, 46 L. ed. 236, and Ex parte Spencer, 228 U. S. 652, 658, 33 S. Ct. 709, 57 L. ed. 1010, are notable instances. We regard the rule as well established in this jurisdiction.

"But it does not follow that a refusal to discharge on one application is without bearing or weight when a later application is being considered. In early times when a refusal to discharge was not open to appellate review, courts and judges were accustomed to exercise an independent judgment on each successive application, regardless of the number. But when a right to an appellate review was given the reason for that practice ceased and the practice came to be materially changed,—just as when a right to a comprehensive review in criminal cases was given the scope of inquiry deemed admissible on *habeas corpus* came to be relatively narrowed.

"The federal statute (§ 761, Rev. Stat., 28 USCA, § 461) does not lay down any specific rule on the subject, but directs the court 'to dispose of the party as law and justice may require.' A study of the cases will show that this has been construed as meaning that each application is to be disposed of in the exercise of a sound judicial discretion guided and controlled by a consideration of whatever has a rational bearing on the propriety of the discharge sought. Among the matters which may be considered, and even given controlling weight, are (a) the existence of another remedy, such as a right in ordinary course to an appellate review in the criminal case, and (b) a prior refusal to discharge on a like application. [Citing cases.] The decision in the Cuddy Case [Ex parte Cuddy (9 Cir.) 40 F. 62] was on a second application, and was given by Mr. Justice Field. While holding the doctrine of *res judicata* inapplicable, he said, 'the officers before whom the second application is made may take into consideration the fact that a previous application has been made to another officer and refused; and in some instances that fact may justify a refusal of the second. The action of the court or justice on the second ap-

plication will naturally be affected to some degree by the character of the court or officer to whom the first application was made, and the fullness of the consideration given to it.'

"In practice the rules we here have outlined will accord to the writ of *habeas corpus* its recognized status as a privileged writ of freedom, and yet make against an abusive use of it. As a further safeguard against abuse the court, if not otherwise informed, may on receiving an application for the writ require the applicant to show whether he has made a prior application and, if so, what action was had on it.

"Here the prior refusal to discharge was by a court of coördinate jurisdiction and was affirmed in a considered opinion by a Circuit Court of Appeals. Had the District Court disposed of the later applications on that ground, its discretion would have been well exercised and we should sustain its action without saying more. But its decision does not appear to have been put on that ground; and, as circumstances are disclosed which make it appropriate that we consider and pass on two of the objections urged against a removal, we turn to them.

"Both objections go to the jurisdiction of the court before which it is proposed to take and try the accused. * * *

"It must be conceded that under the Sixth Amendment to the Constitution the accused can not be tried in one district on an indictment showing that the offense was not committed in that district; and it also must be conceded that there is no authority for a removal to a district other than one in which the Constitution permits the trial to be had."

In Wong Doo v. United States, 265 U. S. 239, 44 S. Ct. 524, 68 L. ed. 999, it was held that the strict doctrine of *res judicata* does not apply to *habeas corpus,* citing Salinger v. Loisel, 265 U. S. 224, 44 S. Ct. 519, 68 L. ed. 989. It was held also that the court, in its sound discretion, could dismiss a petition for *habeas corpus* because of a prior refusal, when the ground for the second application was set up, with another, in the first, and when the evidence to support it then was withheld without excuse for use on a second

attempt if the first failed. The court said (265 U. S. 241, 44 S. Ct. 525, 68 L. ed. 1000:

"It therefore must be held that in this case the courts below erred in applying the inflexible doctrine of *res judicata*. But it does not follow that the judgment should be reversed; for it plainly appears that the situation was one where, according to a sound judicial discretion, controlling weight must have been given to the prior refusal."

In Frank v. Mangum, 237 U. S. 309, 330, 35 S. Ct. 582, 588, 59 L. ed. 969, 981, the court said:

"* * * The rule at the common law, and under the act 31 Car. II, c. 2, and other acts of Parliament prior to that of July 1, 1816 (56 Geo. III, c. 100, § 3), seems to have been that a showing in the return to a writ of *habeas corpus* that the prisoner was held under final process based upon a judgment or decree of a court of competent jurisdiction, closed the inquiry. * * * But when Congress, in the act of February 5, 1867 (ch. 28, 14 Stat. 385), extended the writ of *habeas corpus* to all cases of persons restrained of their liberty in violation of the Constitution or a law or treaty of the United States, procedural regulations were included, now found in Rev. Stat., §§ 754-761, 28 USCA, §§ 454-461."

In the courts of the United States, there may be a judicial inquiry into the very truth and substance of the causes of his detention although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to a judgment against him.

In Johnson v. Zerbst, 304 U. S. 458, 466-468, 58 S. Ct. 1019, 1024-1025, 82 L. ed. 1461, 1467-1468, 146 A. L. R. 357, the court said:

"* * * Congress has expanded the rights of a petitioner for *habeas corpus* and the '* * * effect is to substitute for the bare legal review that seems to have been the limit of judicial authority under the common-law practice, and under the Act of 31 Car. II, c. 2, a more searching investigation, in which the applicant is put

upon his oath to set forth the truth of the matter respecting the causes of his detention, and the court, upon determining the actual facts, is to "dispose of the party as law and justice require."

" 'There being no doubt of the authority of the Congress to thus liberalize the common law procedure on *habeas corpus* * * *, it results that under the sections cited a prisoner in custody pursuant to the final judgment of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to a judgment against him. * * *

" '* * * it is open to the courts of the United States upon an application for a writ of *habeas corpus* to look beyond forms and inquire into the very substance of the matter, * * *'

\* \* \* \* \*

"It must be remembered, however, that a judgment can not be lightly set aside by collateral attack, even on *habeas corpus*. When collaterally attacked, the judgment of a court carries with it a presumption of regularity."

The later federal cases have followed the decisions in the Salinger and Wong Doo cases. The federal statute referred to in the Salinger case, and upon which decisions in the federal courts are based, is 28 USCA, § 461, which reads:

"The court, or justice, or judge shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require."

The Minnesota statutes applicable to the writ of *habeas corpus* have no such provision. The holding of the federal courts is well stated in a note under 28 USCA, § 461, p. 162, where it is said:

"The common-law doctrine of res judicata does not extend to a decision on habeas corpus refusing to discharge a prisoner. But in the exercise of its sound, judicial discretion 'to dispose of the

party as law and justice may require,' a federal court may base its refusal to discharge on a prior refusal; and, as a safeguard against abuse of the writ, the applicant in any case may be required to show whether he has made a prior application and, if so, what was done on it. Salinger v. Loisel * * * 265 U. S. 224, 44 S. Ct. 519, 68 L. Ed. 989."

Thus a first denial may be sufficient to justify the court in denying petition.

In Wong Sun v. United States (6 Cir.) (1923) 293 F. 273, a case decided shortly prior to the Salinger case, the court held that, where a judgment denying a writ of *habeas corpus* had been affirmed on appeal, the rule of *res judicata* applied, in the absence of new considerations, or considerations which were unknown to petitioner on first application. The court said (293 F. 275) : "As a practical proposition, the basis for the old common-law rule has thus disappeared." This was based on the proposition that there was a right of review by an appellate court.

In 39 C. J. S., Habeas Corpus, § 105, it is stated:

"Although not applicable in all jurisdictions, the general rule supported by the great weight of authority is, in the absence of a statute providing otherwise, that a refusal to discharge relator is not a bar to, or res judicata on, a subsequent application for the writ. However, the prior adjudication may be taken into consideration by the court to prevent abuse of the writ. * * * By the great weight of authority, the rule is, in the absence of a statute providing otherwise, that a refusal to grant a writ of habeas corpus, or a dismissal of the writ, or a remand of the relator to custody, or other refusal to discharge him, is not a bar to, or. res judicata on, a subsequent application for the writ. * * * However, even though the doctrine of res judicata is not applicable, where the second application is based on the same or not materially practically different facts, the fact that the previous application has been made and refused may be taken into consideration, to prevent abuse of the writ, and, in the discretion of the court, it

may be given controlling weight; it may warrant or justify a denial of the second application summarily, without a close examination of the facts."

And further, *Id.* p. 699:

"The same court will not ordinarily entertain successive applications for writs of habeas corpus based on the same ground and the same facts, or on other grounds or facts which existed when the first application was made whether or not they were presented at that time. Even where it does entertain a second application, it will be disinclined to depart from its former decision in the absence of circumstances making an entirely different case. The practice of making successive applications to the same court is one that should not be encouraged."

25 Am. Jur., Habeas Corpus, § 156, states the rule as follows:

"While there is some conflict of opinion on the question, it is the prevailing view that in the absence of statute, a decision under one writ of habeas corpus, refusing to discharge a prisoner, is not a bar to the issuing of another writ, based on the same state of facts, or to a hearing and discharge thereon. At early common law, the rule was that the doctrine of res judicata did not extend to a decision on habeas corpus refusing to discharge the prisoner, and the Federal Courts, as well as the state courts, have generally accepted or given effect to that rule where not modified by statute. Such rule, however, is not so inflexible as to preclude a court from giving some consideration to the denial of a discharge to the same petitioner in a prior proceeding. * * * In some jurisdictions, statutes have expressly changed the common-law rule as regards the effect of a final determination of a habeas corpus proceeding by prohibiting the commencement of a second habeas corpus proceeding for the same cause while the determination in the first remains unreversed. Such statutes, in combination with other statutes which provide for a review, upon the application of either party, of a decision which constitutes a final determination of a habeas corpus proceeding, operate to render the doctrine of res judicata

applicable in habeas corpus proceedings to the same extent as in other proceedings."

Minn. St. 1941, § 589.29 (Mason St. 1927, § 9767), provides for appeals in *habeas corpus* proceedings as follows:

."Any party aggrieved by the final order in proceedings upon a writ of habeas corpus may appeal therefrom to the supreme court in the same manner as other appeals are taken from the district court, except that no bond shall be required of the appellant."

This provision was first enacted in 1895 (L. 1895, c. 327). Prior to that time no·special statute providing for appeals in *habeas corpus* cases existed. The statute also provides (§ 589.30 [§ 9768]):

"* * * The appeal shall be tried and judgment rendered in the same manner as if the writ had originally issued out of the supreme court * * *."

In re Snell, 31 Minn. 110, 16 N. W. 692, *supra,* was decided in 1883, and State ex rel. Lembke v. Bechdel, 37 Minn. 360, 34 N. W. 334, 5 A. S. R. 854, *supra,* in 1887. Respondent contends that, since any party aggrieved by the final order in proceedings upon a writ of *habeas corpus* may now, under a special appeal statute applicable to *habeas corpus,* appeal to this court, the rule laid down in the Snell and Bechdel cases should no longer be followed, and that the doctrine of *res judicata* applies in proceedings upon a writ of *habeas corpus* with the same effect as in civil actions.

In 3 Dunnell, Dig. § 4130, in a footnote, it is stated: "This rule [the rule in the Snell and Bechdel cases] probably no longer prevails now that there is an appeal to the supreme court."

As has been stated, in this state a special appeal statute covering writs of *habeas corpus* has been enacted. This statute, in addition to providing for an appeal, also provides for a trial *de novo* of such appeals in this court. In view of this situation, we are of the opinion that the basis of the common-law doctrine permitting a renewal of the petition on the same facts no longer exists, and that the doctrine of *res judicata* applies.

The order quashing the writ and remanding relator to the custody of respondent is affirmed.

So ordered.