# STATE EX REL. DAVID C. STEPHENSON v. ED RYAN.[1]

November 23, 1951.

No. 35,491.

---

[1]Reported in 50 N. W. (2d) 259.

*Warner & Ratelle,* for appellant (relator below).

*J. A. A. Burnquist,* Attorney General, *Lowell J. Grady,* Assistant Attorney General, *Michael J. Dillon,* County Attorney, *Otto Morck,* Assistant County Attorney, *J. Emmett McManamon,* Attorney General of Indiana, and *George W. Hand,* Assistant Attorney General of Indiana, for respondent.

LORING, CHIEF JUSTICE.

Relator petitioned the district court for Hennepin county for a writ of habeas corpus. He had been arrested as a fugitive from justice upon an extradition warrant by the governor of Minnesota on request of the governor of Indiana. The district court ordered the writ quashed, and the relator appealed to this court, where the matter was considered *de novo.* This court appointed as referee the Honorable Alfred P. Stolberg, formerly judge of the nineteenth judicial district.

The referee took the evidence offered by relator and by respondent and, pursuant to the order of appointment, made findings of fact, which have the effect of a special verdict. They have not been questioned by relator. The referee, pursuant to the order of reference, also made recommendations for conclusions of law and that the writ be quashed.

His findings of fact, which we adopt as our own, are as follows:

"1.

"That on the 16th day of November, 1925, the relator, David C. Stephenson, pursuant to an Indictment found and filed in the Hamilton County Circuit Court of the State of Indiana, was found guilty of murder in the second degree and thereupon sentenced and committed by said Court to imprisonment in the Indiana State Prison for and during his natural life.

"2.

"That thereafter the State Commission on Clemency of the State of Indiana recommended to the Governor of said State that the life sentence of the relator be commuted to a term of 'Time served to Life'; that pursuant to said recommendation, the Governor of the said State, on the 10th day of February, 1950, commuted the life sentence of said relator to a term of 'Time served to Life'.

"3.

"That on the 17th day of March, 1950, the Board of Trustees of the Indiana State Prison, which constitutes the Board of Parole of said State, recommended that the relator be paroled under the terms and conditions of the law and the Board of Trustees. (See Respondent's Exhibit D).

"4.

"That on the 23rd day of March, 1950, the Board of Trustees aforesaid and the relator executed a so-called Parole Release Agreement (Respondent's Exhibit E), which Agreement reads as follows:

" 'INDIANA STATE PRISON

Alfred F. Dowd, Warden

Michigan City, Indiana

" 'PAROLE RELEASE AGREEMENT

" 'KNOW ALL MEN BY THESE PRESENTS: That the Board of Trustees of the Indiana State Prison of the State of Indiana, desiring to test the ability of

David C. Stephenson # 11148

an inmate of said institution, to refrain from crime and lead an honorable life, do, by virtue of the authority conferred upon them by law, and with the approval of the State Department of Public Welfare, hereby parole the said David C. Stephenson to the supervisory custody of the State Department of Public Welfare and allow him to be at liberty outside of the buildings and enclosures of said institution, subject, however, to the accompanying parole rules and regulations of the State Department of Public Welfare which are made a part of this agreement, and subject, further, to the following special conditions: Paroled with a maximum expiration date of:

Life. This release was authorized and special condition attached by the Board of Trustees at their meeting of: 3-17-50.

" 'Given in triplicate this 23 day of March 1950 by authority of the Board of Trustees.

" 'SEAL   Leo T. Mulva
Paul L. Myers
Edwin R. Thomas   } BOARD OF TRUSTEES
George Cooper

" 'ALFRED F. DOWD
Warden

" 'I, David C. Stephenson, an inmate of the Indiana State Prison, hereby declare that the above Parole Agreement and the accompanying parole rules and regulations of the Department of Public Welfare have been read and explained to me. I clearly understand and accept the same, and do hereby pledge myself honestly to comply with them and with special conditions stipulated above.

" 'Signed in triplicate this 23 day of March 1950

" '(signed) D. C. STEPHENSON

" '(signed) H. J. Aldemettel
Inst. Parole Officer Witness

" '(signed) Alfred F. Dowd
Warden'

"That on the back of said Agreement are rules and regulations to be observed by parolees which read, in part, as follows:

" 'RULES AND REGULATIONS TO BE OBSERVED BY PAROLEES

" 'In the accompanying Parole Release Agreement you have pledged yourself to faithfully obey these rules and regulations. Failure to do so will be considered sufficient cause for revocation of your parole and your return to this institution. You must thoroughly familiarize yourself with these rules and their meaning that you will at all times know what is expected of you. A plea that you did not know what these rules provided will not be accepted as an excuse for violations.

" '1—Upon release the parolee shall proceed at once to the place of employment or sponsor provided for him, viz:——————— and

on arrival, his arrival report shall be filled out, signed by him, countersigned by his sponsor, and then taken immediately to the County Department of Public Welfare for counter-signature and recording. The parolee shall give his correct place of residence and there remain unless he is given permission by the County Department of Public Welfare, approved by the Supervisor of Paroles, to change his residence or employment, or both.

" '2—On the first day of each month he shall fill out in full, sign and mail to the Supervisor of Paroles, a report blank which shall have been certified to by his employer or sponsor and countersigned at the office of the County Department of Public Welfare.

" '3—* * * * *

" '4—* * * * *

" '5—* * * * *

" '6—* * * * *

" '7—* * * * *

" '8—* * * * *

" '9—* * * * *

" '10—* * * * *

" '11—* * * * *

" '12—He shall, while on parole, remain in legal custody and under the control of the State Department of Public Welfare, and shall be liable to be taken again and confined within the enclosure of the institution from which he was paroled for any reason that shall be satisfactory to the State Department of Public Welfare, and at its sole discretion, until he receives notice from the Supervisor of Paroles that his final discharge has been ordered.'

"5.

."That upon the granting of the aforesaid parole relator requested permission to leave the State of Indiana to make his home with Catherine Thompson, a sister, who resided at Tulsa, Oklahoma; that thereupon the relator executed an agreement for the purpose of leaving Indiana and going to the State of Oklahoma, which Agreement reads as follows:

" 'Agreement Of Prisoner Permitted To Go To
Another State

" 'To go to State of Oklahoma, from State of Indiana.

" 'Name             David C. Stephenson

Number           #11148

Institution        Indiana State Prison

" 'I, David C. Stephenson, in consideration of being granted a parole from the above institution and especially being granted the privilege of leaving the State of Indiana to go to Tulsa, Oklahoma agree to the following:

" '1. I Will make my home with Mrs Catherine Thompson, Tulsa Okla until a change of residence is duly authorized by the proper authorities of the State of Oklahoma.

" '2. I will comply with the parole rules and regulations as laid down by both the State of Indiana and the State of Oklahoma.

" '3. I will, when duly instructed, return to the State of Indiana.

" '4. I hereby waive extradition to the State of Indiana and also agree that I will not contest any effort to return me to the State of Indiana.

" 'Witnessed by:                  Signature of Parolee:

H. J. Aldemettel (signed)         (signed) D. C. Stephenson

Inst. Parole Officer               Signed at Indiana State Prison

Alfred F. Dowd (signed)

Warden                       Dated March 23, 1950

" 'Permission is hereby granted the parolee to reside in the above state, to be supervised by Mr. Campbell LeFlore, Actg Director Pardon Paroles State Capitol Oklahoma City Okla

" 'Date: 3-23-50

" 'J. D. Copeland

Supervisor of Paroles'

"That after signing the last named exhibit relator was released from the State Prison and accompanied his sister to Tulsa, Oklahoma; that relator became dissatisfied with conditions at Tulsa and about August 1st, 1950, relator was granted permission to move to Carbondale, Illinois, to enter into business with one Lloyd O. Hill;

that this arrangement was approved by the supervisor of parolees of both the States of Indiana and Illinois, and relator then moved to the State of Illinois. That upon being granted permission to move from Tulsa to Illinois the relator executed an agreement, which reads as follows:

"'AGREEMENT OF PRISONER WHEN PERMITTED TO GO TO ANOTHER STATE

"'SENDING STATE   Indiana .          RECEIVING STATE   Illinois

Indiana Reformatory

"'I, D. C. Stephenson No. 11148          Indiana State Prison

in consideration of having been granted a parole by

Indiana Reformatory

the Board of Trustees of the Indiana State Prison and especially being granted the privilege to leave the State of Indiana to go to Cairo Illinois hereby agree
<u>    </u>

City    State

"'1.   That I will make my home with <u>305 W. Main St., Carbondale,</u>

Name

<u>Illinois Cairo Hotel, Cairo, Illinois</u> until a change of residence is

Address

duly authorized by the proper authorities of <u>Illinois</u>

Receiving State

"'2.   That I will comply with the parole rules and regulations as laid down by both the state of Indiana and <u>Illinois</u>

Receiving State.

"'3.   That I will when duly instructed by the Division of Corrections of the State Department of Public Welfare of the State of Indiana or by the <u>Department of Public Safety</u> of <u>Illinois</u> promptly

Department    Receiving State

return to the State of Indiana, in accordance with the instructions so given.

"'4.   Failure to comply with the above will be deemed to be a violation of the terms and conditions of parole for which I may be returned to the State of Indiana.

" '5. That in further consideration of this parole and permission being granted, I hereby do waive extradition to the State of Indiana and also agree that I will not contest any effort by any state or in any state to return me to the State of Indiana, nor will I consent, approve or ratify anything to be done to prevent my return to the State of Indiana when so requested as above set forth.

" 'Dated Aug. 12 1950     Signed D. C. Stephenson

" 'Witnesses:      ·          Lloyd O. Hill

Bonnie K. Hill'

"That in the month of July, 1950, relator made written report to the Supervisor of Paroles of the State of Indiana, which report was certified to be correct by the aforesaid Hill and countersigned by Robert A. Aldrich, a parole officer of the State of Illinois.

"(See Respondent's Exhibit K)

"That since making the above report, relator has failed to make any reports to the Supervisor of Parolees of the State of Indiana or Illinois; that relator subsequent to his moving to Illinois as above stated moved to the Village of Robbinsdale, Minnesota, in the month of September, 1950, where he made his home until apprehended by respondent under a rendition warrant, commonly known as the Governor's Warrant, issued by the Governor of the State of Minnesota on the 20th day of November, 1950; that respondent is the Sheriff of Hennepin County, Minnesota, and has the relator in custody for the State of Indiana by virtue of said rendition warrant, which was issued pursuant to an application made by the Governor of the State of Indiana for the requisition of relator as a fugitive from justice from the State of Indiana; that relator lived under an assumed name in Robbinsdale, Minnesota.

"That prior to the said application for requisition, namely, on the 20th day of October, 1950, the Board of Parole of the Indiana State Prison declared relator to be delinquent and a fugitive from justice.

"6.

"That on the 20th day of November, 1950, and at all times since the relator moved from the State of Illinois to the Village of

Robbinsdale, Minnesota, relator has been a fugitive from justice from the State of Indiana."

The referee's recommendations for conclusions of law and order for disposition of the writ were as follows:

" 'That the relator, David C. Stephenson, was at the time of the issuance of the Writ of Habeas Corpus herein, and ever since, has been in the legal custody of the respondent, Ed Ryan, as Sheriff of the County of Hennepin, State of Minnesota, under and by virtue of a requisition warrant issued by the Governor of the State of Minnesota, bearing date November 20, 1950, and that said relator is not entitled to be released from the custody of respondent,'

"and that an Order be made as follows:

" 'That the Writ of Habeas Corpus heretofore issued herein be, and the same is hereby discharged; that the aforesaid relator be, and he is hereby remanded to the custody of respondent as Sheriff of Hennepin County, Minnesota, to transport relator to the State line of Minnesota, and deliver him to W. W. Pence, who was appointed by the Governor of the State of Indiana, agent to demand and receive the said relator, David C. Stephenson.' "

In support of his findings and recommendations, the referee made the following memorandum of the law applicable to the case, which we approve:

"We are taking the liberty of writing a memorandum. If this is not proper, we know the Court will disregard the same.

"Respondent in his return to the Writ of Habeas Corpus sets out that he holds the relator under a rendition warrant issued by the Governor of Minnesota. A copy of the Warrant is attached to and made a part of the return. The return is not traversed and the warrant is respondent's authority for holding relator in custody.

"The courts will presume that the Governor has done his duty and issued a warrant upon sufficient proof.

"State ex rel. Arnold v. Justus, 84 Minn. 237, 87 N. W. 770, 55 L. R. A. 325;

"State ex rel. Fowler v. Langum, 126 Minn. 38, 147 N. W. 708;
"22 Am. Jur., Extradition, § 54, p. 293.

"In habeas corpus proceedings for the discharge of one arrested on the warrant of the governors in interstate extradition proceedings, the burden of proof showing that he is not a fugitive from justice is upon the prisoner. A warrant in due form and containing the proper recitals is prima facie evidence that the accused is a fugitive from justice.

"State ex rel. Arnold v. Justus, *supra;*

"State ex rel. Fowler v. Langum, *supra;*

"State ex rel. Treseder v. Remann, 165 Wash. 92, 103, 4 P. (2d) 866, 870, 78 A. L. R. 412, 418.

" 'When a person is held in custody as a fugitive from justice under an extradition warrant, in proper form, and showing upon its face all that is required by law to be shown as a prerequisite to its being issued, he should not be discharged from custody unless it is made *clearly and satisfactorily* to appear that he is not a fugitive from justice * * *.' [Italics supplied.]

"People ex rel. McNichols v. Pease, 207 U. S. 100, 112, 28 S. Ct. 58, 62, 52 L. ed. 121, 126;

"State ex rel. Bond v. Langum, 135 Minn. 320, 160 N. W. 858.

" '* * * the court will not discharge a defendant arrested under the governor's warrant where there is merely *contradictory* evidence on the subject of presence in or absence from the State, * * *.' [Italics supplied.]

"Munsey v. Clough, 196 U. S. 364, 375, 25 S. Ct. 282, 285, 49 L. ed. 515, 518.

"As we understand it, relator does not question the form of the rendition warrant. In other words, relator concedes that the warrent is in due form and contains the proper recitals.

"The relator does contend that he is not a fugitive from justice for the reason that when granted release from prison the only condition imposed was that he should not return to the State of Indiana. The respondent claims that no such condition was imposed. We are satisfied that no such condition was imposed. If we assume

that such a condition was imposed and that relator was advised to leave the State and never return, it would be no defense in this proceeding.

"State ex rel. Burner v. Richter, 37 Minn. 436, 35 N. W. 9;

"State ex rel. Shapiro v. Wall, 187 Minn. 246, 248, 244 N. W. 811, 812, 85 A. L. R. 114.

"On the other hand, we are fully satisfied that conditions, other than the one claimed by relator, were imposed. Relator admitted that he signed certain papers before released, but that he had not read them, and did not know what they contained. On cross-examination he admitted signing 'Parole Release Agreement', Exhibit E. When relator was on the witness stand, he demonstrated that he was a man of a keen mind and very much alert. He also admitted that while in prison he worked in the prison office where parole matters were handled, and that in at least some respects, he was familiar with what was required upon the release of a prisoner on parole. Respondent's Exhibit B, the requisition papers, was introduced in evidence. This exhibit, among other things, contains photographs, finger prints and other information regarding relator. This information discloses that relator is a lawyer.

"That relator was under obligation to make reports as to his whereabouts, doings, etc., is evidenced by Respondent's Exhibit K, which is a report to the Supervisor of Paroles of Indiana. Relator denies that the name thereon was his signature. The warden of the Indiana State Prison testified that, in his opinion, it was the relator's signature. The Hennepin County District Court file contains an affidavit by relator sworn to before one of his present counsel on December 14th, 1950. A comparison of the signature on this affidavit with that on Exhibit K completely satisfies us that the signature on Exhibit K is the signature of relator. Relator left Illinois without permission of any authority and took up his residence in Robbinsdale under an assumed name.

"What was the motive or purpose of relator in going to Minnesota is immaterial. What his belief was at the time he moved is immaterial.

"Appleyard v. Massachusetts, 203 U. S. 222, 27 S. Ct. 122, 51 L. ed. 161;

"State ex rel. Shapiro v. Wall, 187 Minn. 246, 248, 244 N. W. 811, 812, 85 A. L. R. 114;

"Roberts v. Reilly, 116 U. S. 80, 6 S. Ct. 291, 29 L. ed. 544;

"Taylor v. Wise, 172 Iowa 1, 126 N. W. 1126.

" 'A convicted person whose parole has been revoked because of a violation of a condition that he not leave the state without the permission of the parole officer is subject to extradition as a fugitive from justice. This general rule prevails even though the paroled prisoner is permitted to leave the paroling state, if the prisoner goes to a state not authorized by the parole; * * *. The paroled prisoner is declared to be a fugitive from justice on the ground that he is a convict whose time has not expired and who, therefore, is charged with crime under the United States Constitution.'

"22 Am. Jur., Extradition, § 25, p. 264;

"Drinkall v. Spiegel, 68 Conn. 441, 36 A. 830, 36 L. R. A. 486;

"Ex parte Williams, 10 Okl. Cr. 344, 136 P. 597, 51 L.R.A. (N.S.) 668;

"Ex parte Hamilton, 41 Okl. Cr. 322, 273 P. 286;

"In re McBride, 101 Cal. App. 251, 281 P. 651;

"Ex parte Nabors, 33 N. M. 324, 267 P. 58;

"Ex parte Carroll, 86 Tex. Cr. 301, 217 S. W. 382, 8 A. L. R. 901;

"Ex parte Colcord, 49 S. D. 416, 207 N. W. 213.

"The legality of the revocation of the parole is a question for the paroling state, for that state alone has the right to construe its laws.

"Ex parte Williams, 10 Okl. Cr. 344, 136 P. 597, 51 L.R.A. (N.S.) 668.

"There was some attempt on the part of relator to inject at the hearing that there was some ulterior motive or malice on the part of the officials of Indiana in bringing the extradition proceedings. Such inquiry is not proper on a Writ of Habeas Corpus.

"State ex rel. Nemec v. Sheriff of Hennepin Co. 148 Minn. 484, 181 N. W. 640;

"State ex rel. Fowler v. Langum, 126 Minn. 38, 147 N. W. 708;

"People ex rel. Carr v. Murray, 357 Ill. 326, 192 N. E. 198, 94 A. L. R. 1487 (see notes on pages 1496-1502);

"22 Am. Jur., Extradition, § 15, p. 254.

"No authority need be cited that the guilt or innocence of defendant cannot be determined in habeas corpus proceedings. That matter was entirely for the Indiana courts.

"Relator seems to rely strongly on what was held in People ex rel. Hutchings v. Mallon, 126 Misc. 591, 214 N. Y. S. 211. We believe that the holding has been overruled by People ex rel. Hutchings v. Mallon, 218 App. Div. 461, 218 N. Y. S. 432, and *Id.* 245 N. Y. 521, 157 N. E. 842.

"Pursuant to the request of counsel, of both relator and respondent, we suggest that no action be taken by the Supreme Court upon the foregoing findings of fact, etc., until at least ten days have elapsed from the date of the filing of the foregoing and within."

This court concludes that relator was, at the time of the issuance of the writ of habeas corpus, and ever since has been, in the legal custody of respondent as sheriff of Hennepin county in the state of Minnesota, by virtue of a requisition warrant issued by the governor of Minnesota, dated November 20, 1950, and that said relator is not entitled to release from the custody of respondent. Accordingly, it is ordered and adjudged that the writ of habeas corpus be discharged; that relator be remanded to the custody of respondent as sheriff of Hennepin county to transport relator to the state line of Minnesota and deliver him to W. W. Pence, who was appointed by the governor of Indiana as agent to demand and receive relator, or to such other agent as the governor of Indiana may designate for such purpose.

So ordered.