180 So.2d 450

Theodore R. BOOTHE

v.

STATE.

1 Div. 965.

Court of Appeals of Alabama.

Nov. 16, 1965.

———◇———

Thos. M. Haas, Mobile, for appellant.

Richmond M. Flowers, Atty. Gen., and W. Mark Anderson, III, Asst. Atty. Gen., for the State.

**CATES, Judge.**

This habeas corpus appeal was argued and submitted on November 15, 1963. It has been assigned and reassigned.

The conference at which this opinion was adopted is the first at which unanimity, let alone affirmance, has come about. Delay in this court arose principally because the extraditing authorities (1) took apparently inconsistent grounds for wanting to return Boothe, and (2) failing to prove Georgia decisional and statutory law under the Alabama rules of evidence as was done in Compton v. State, 152 Ala. 68, 44 So. 685, affirmed sub nom. Compton v. State of Alabama, 214 U.S. 1, 29 S.Ct. 605, 53 L.Ed. 885. Restatement, Conflict of Laws, § 622.[1]

**I.**

Boothe appeals from a judgment of Hon. Wm. C. Taylor, remanding Boothe to the Chief of Police of the City of Mobile for delivery to the extradition agents of the State of Georgia.

The petition for the writ alleges Boothe was detained by the Mobile police as an escaped parole violator from the Fulton County Criminal Court.

The State's return succinctly alleges detention on a warrant of the Governor of Alabama for delivery to the custody of the agent of the State of Georgia. The return by reference incorporates the rendition warrant "together with the extradition papers in this cause." However, neither the Alabama Governor's warrant nor the papers were filed physically in the office of the Clerk of the Circuit Court.

Nevertheless, on the taking of testimony, the warrants of both governors together with supporting papers came in evidence without dispute or objection.

**II.**

On March 20, 1962, Boothe gave Austin Abbott Used Cars, Atlanta, a check for $1,135.55. It was not paid on presentment to the bank.

Georgia classifies doing this, if with intent to defraud, as a misdemeanor with the appellation of "Fraud Check." At least the requisition is our authority for this mongrelization of a noun employed as an adjective.

The asylum state is only concerned that the charge is a crime against the laws of the demanding state: of this we are satisfied.

Of more serious concern is the discrepancy in the backup papers revealing— contrary to the requisition warrant's terms —that Boothe was in fact wanted for a hearing to show cause why his probation should not be revoked.

The papers to show the original conviction would, under the standards of review in this state, neither support a judgment

---

1. "§ 622. Foreign Common Law. In the absence of evidence, the common law of another common-law state is presumed to be the same as the common law of the forum." Accord Inge v. Murphy, 10 Ala. 885. See also Harwood, Alabama Annotation to Conflicts.

on appeal nor detention on habeas corpus. This because the original accusing affidavit is made only before a commercial notary public who presumptively has no power to issue a warrant of arrest. We pretermit consideration of the complaining oath being "from the best of his knowledge and belief."

The May 8, 1962, judgment entry in the Criminal Court of Fulton County fails to show any appearance either for the State or the defendant. The court's adjudication seems based only on a prosecutor's complaint and affidavit, the latter document not reciting that the complaining witness executed it before the court or its clerk. The solicitor affixed his signature to the foot of the "accusation." See Harris v. State, 257 Ala. 3, 60 So.2d 266.

Another defect of this judgment is its failure to show that any plea was entered by or for the defendant except an entry:

"The Defendant in the within Accusation waives arraignment, list of witnesses, copy of accusation and pleas [sic] * * * Guilty. This 8 day of May, 1962

/s/ Frank A. Bowes
Solicitor."

To offset the effect of such a terse record, there was put in evidence a probation agreement subscribed by Boothe, the Judge of the Fulton County Criminal Court, and the probation officer. The premise recites that Boothe has pleaded guilty "and is hereby sentenced * * * in the Public Works Camp * * * for twelve (12) months and six (6) months in Jail, fine of $100 and to make restitution * * *."

This document dated May 29, 1962, takes the form of a court order (1) suspending sentence for 18 months, (2) prescribing conditions, (3) modifying original sentence and (4) warns of possible modification or revocation of probation.

The effect of these documents as at May 29, 1962, was to show Boothe to be a probationer of the court for 18 months. Hence, even if he had fled Georgia the need to extradite him to face a charge of check fraud was nonexistent at that point of time.

### III.

However, the Georgia papers also show the following:

### III.

"'AFFIDAVIT AND WARRANT FOR ARREST OF PROBATIONER

"STATE OF GEORGIA          FULTON COUNTY CRIMINAL COURT
          VS.                   NO: 19727
     THEODORE R. BOOTHE     CHARGE: FRAUD CHECK

"GEORGIA, FULTON COUNTY

"Personally appeared D. W. Austin, Jr., who, being duly sworn on oath deposes and says that he is a Probation Officer of Fulton County, Georgia, and that THEODORE R. BOOTHE was placed on probation by this Court on the 8th day of May, 1962, upon the charge of Fraud Check and that to the best of affiant's knowledge and belief said defendant has since violated the terms of (his or her) probation in the following manner: Failure to report and pay as directed

"That affiant makes this affidavit for the purpose of obtaining a warrant for the arrest of said probationer in order that (he xxx) may be returned to this Court to answer this charge of violation of probation. ·

"/s/ D. W. AUSTIN, JR.
D. W. AUSTIN, JR

"Sworn to and subscribed before me this 20th day of June 1962.

"/s/ Billie F. Davis
Notary Public

"Notary Public, Georgia State at Large
My commission expires Nov. 19, 19——

GEORGIA, FULTON COUNTY

"TO ALL AND SINGULAR, THE SHERIFFS, DEPUTY SHERIFFS, AND ALL OTHER DULY CONSTITUTED ARRESTING OFFICERS.

"Affidavit having been made that the above named defendant has violated the terms of (his xxx) probation, you are hereby commanded to arrest said defendant, Theodore R. Boothe and to safely keep (him xxx) until he may be brought before this Court to answer the charge of violation of probation as set forth in the foregoing affidavit.

"This the 20th day of June 1962

"/s/ Charles A. Wofford
CHARLES A. WOFFORD
JUDGE,
CRIMINAL COURT OF FULTON
COUNTY' "

———◆———

We note here that these papers appear to be connected in that (1) the caption describes it as "Affidavit and Warrant For Arrest of Probationer"; (2) opposite the names of the parties, we find the name of the court, case number, and the offense charged; (3) the last paragraph of the affidavit expressly prays for a warrant to have Boothe brought to court for a revocation hearing; (4) the affiant is an officer of the court; (5) the judge's capias ad audiendum judicium refers to a certain "affidavit," and the probation officer's written and sworn charge quoted above fits this description; and (6) both affidavit and warrant bear the same date.

In our analysis of the totality of the evidence, this last warrant is the only one which will support the rendition warrant.

IV.

As a preliminary enquiry, we need to explain away the apparent lack of an affidavit made before a magistrate.

Here were two critical affidavits purporting to be subscribed and sworn to before notaries public, neither of whom styled his office with any further indication such as "ex officio justice of the peace."

■ Our law of conflicts requires us, as to Georgia, one of the thirteen original colonies, to presume, in the absence of evidence, that the common law prevails. In Mahone v. Haddock, 44 Ala. 92, the court said:

" * * * There is no proof showing what the laws of Georgia are which govern such a state of facts. In such

case, if no statute law is shown, the court presumes that the common law prevails in that State and governs the relations of the parties. * * *"

■ A notary was an office known anciently to the Common Law. Moreover, it was distinctly commercial and entirely civil. Carroll v. State, 58 Ala. 396. Hence, without evidentiary proof such as was adduced in Compton, supra, we cannot assume that a notary public in Georgia is an officer with power to issue warrants of arrest.

■ We think that Title 18 U.S.C. § 3182, which requires the Governor of Georgia to produce "a copy of an affidavit made before a magistrate" does not embrace in the word "magistrate" an ordinary commercial notary not explicitly shown to have criminal authority. Ex parte Powell, 20 Fla. 806; Deering v. Mount, 194 Ga. 833, 22 S.E.2d 828; Denny v. Foster, 204 Ga. 872, 52 S.E.2d 596; People ex rel. LaRue v. Meyering, 357 Ill. 166, 191 N.E. 318; People ex rel. Lipshitz v. Bessenger, 273 App. Div. 19, 75 N.Y.S.2d 392; Ex parte Owen, 10 Okl.Cr. 284, 136 P. 197.

Moreover, the wisdom of requiring proof of foreign law has been borne out by a brief foray into the Georgia statutes since the Compton case, supra, wherein the extraditing authorities showed as a fact that notaries in Georgia were by law then (1907) ex officio justices of the peace.

In 1912 Georgia seems to have amended its Constitution to permit in certain areas the abolition of notaries ex officio justices of the peace. See Georgia Const.1945, § 2–4201. Thus Act No. 276, Georgia Laws 1913, p. 145, abolished such inferior courts in the City of Atlanta. Cooney v. Foote, 142 Ga. 647, 83 S.E. 537, upheld the amendment.

## V.

Title 18, U.S.C. § 3182, does not in express terms provide for extradition for breach of probation or parole. Our statute, Code 1940, T. 15, § 50, makes no mention of a convict fleeing before the expiration of his sentence.

Nevertheless, T. 15, § 52, catchlined "What papers must show," calls for, inter alia, "affidavit made before a magistrate in that [demanding] state, * * * that he has been convicted of crime in that state and has escaped from confinement or broken his parole."

In this context we have no difficulty, for extradition purposes, in equating probation by a sentencing court with parole by an executive authority. Though there may be nuances between the two terms under our Constitutional Amendment No. 38, we cannot translate them into a Georgia milieu.

Basically, we are carrying out a mandate of the Constitution of the United States, Art. 4, § 2, Cl. 2, Lascelles v. State of Georgia, 148 U.S. 537, 13 S.Ct. 687, 37 L.Ed. 549. And though we are aware of no way of compelling a reluctant governor to deliver up, yet it takes but a moment's reflection to sense that if a state becomes a sanctuary for criminals inevitably to some extent its altars will be polluted by those who have sought asylum. The principle of nonsanctuary rests on enlightened self interest.

Though § 3 of the present Uniform Criminal Extradition Act has, since Alabama's enactment of 1931, been changed to cover jumping bail, or breaking probation or parole, we ascribed this change to ultra cautious draftsmen enamored of explicit statutes.

Certainly, one who has been convicted has a sentence to obey and endure. The question here is only as to where. Usually confinement is the mode of punishment. If, however, the convict is on parole or on probation, the judgment is executed extramurally.

Hence, the fact of conviction referred to in § 52, supra, is one bedrock for extra-

dition. Conceptually, a violator of parole or probation is an escapee. Winslow v. Grimes, 214 Ga. 262, 104 S.E.2d 76.

■ Parole violation falls into extraditable offenses. Brewer v. Goff, 10 Cir., 138 F.2d 710; People ex rel. Ross v. Becker, 382 Ill. 404, 47 N.E.2d 475; Commonwealth ex rel. Rushkowski v. Burke, 171 Pa.Super. 1, 89 A.2d 899; Ex parte Summers, 40 Wash.2d 419, 243 P.2d 494; Moulthrope v. Matus, 139 Conn. 272, 93 A.2d 149; Ex parte Kabrich, 343 Mo. 196, 120 S.W.2d 42 ("In doing so, he thereby acquired the status of an escaped convict."); Ex parte Siemon, 167 Tex.Cr. 313, 319 S.W.2d 716.

■ Ordinarily, no further adjudication is needed to put a *parole* violator back in prison. The administrative jurisdictional fact might be questioned in a habeas corpus hearing, but for the executive a memorandum (e. g., in order to locate witnesses or to set up a record made contemporaneously in the regular course of penitentiary business) against a possible later day in court is all that is required, unless a statute requires more as by way of judicial intervention. People ex rel. Pahl v. Hagerty, 262 A.D. 45, 28 N.Y.S.2d 186.

As to probation—certainly in Alabama, partly by statute and partly by judicial construction—we consider a hearing of some sort to be required. This assumption seems to fit the instant case for the capias quoted above is couched in interlocutory tenor, though not as a citation to a rule nisi.

## VI.

■ While an affidavit before a notary alone is insufficient to support extradition, yet there has been one Alabama case recognizing "accusation" in Georgia as a form of information or affidavit and warrant. Harris v. State, 257 Ala. 3, 60 So.2d 266, reversing this court, 36 Ala.App. 518, 60 So.2d 263. We have examined the Harris record and find the "accusation" therein was sworn to and subscribed before a judge of the Superior Court, Atlanta Judicial Circuit.

The Act of Congress requires the affidavit to be before the magistrate, i. e., in his presence. But the swearing need not be done by him.

We think the principles alluded to in Ex parte Rubens, 73 Ariz. 101, 238 P.2d 402; State ex rel. Rogers v. Murnane, 172 Minn. 401, 215 N.W. 863, Ex parte Davis, 333 Mo. 262, 62 S.W.2d 1086, 89 A.L.R. 589, that a reasonable implication connecting the originating affidavit with the presence of the complaining affiant before the magistrate who issues the warrant suffices. This we consider is in the record here.

Thus recitals, simultaneousness, oaths made by court attaches and like factors of internal construction bear on such a connection.

■ When aggregated with the judgment record of the probation agreement there is a cohesive unit to show an original conviction and a charge to answer which could put the suspended sentence into execution.

We think the following excerpt from the opinion of the Supreme Court of Missouri sets forth an analogous factual parallel and a legal subsumption better expressed than we might essay:

"A duly certified copy of an affidavit in which the petitioner is charged with the crime of murder was presented to the Governor of this state [Missouri]. A copy of said affidavit follows:

\*　\*　\*　\*　\*　\*

" 'Wherefore appearer prays that said Charles Allen may be arrested and further dealt with according to law.

" '[Signed] Donat J. Porche.

" 'Sworn to and subscribed before me in the Parish of Pointe Coupee, State of Louisiana, on this the sixteenth day of the month of July, in the year one thousand nine hundred and thirty.

" '[Signed] J. P. Jewell,
'Clerk of Court of 18th Judicial District of Louisiana, in and for the Parish of Pointe Coupee, said State and Ex officio Notary Public for said Parish.'

" 'State of Louisiana, Parish of Pointe Coupee.

" 'The above and foregoing affidavit being considered, it is ordered that a warrant issue for the arrest of Charles Allen as prayed for, and according to law.

" '[Signed] Wm. C. Carruth,
'Judge, 18th Judicial District of State of Louisiana.

" 'A true copy this 16th day of July, 1930.

" '[Signed] J. P. Jewell,
'Clerk 18th Judicial District Court in and for the Parish of Pointe Coupe State of Louisiana.'
[SEAL]

"We note that the clerk of the district court of Louisiana administered the oath to affiant, and he may have written the affidavit. From this it does not follow that the affidavit was made before the clerk, who made no order in the proceeding. The act of Congress requires the affidavit to be made before a magistrate. Section 5278, Rev. St. of U. S. (18 USCA § 662 [now § 3182]). This does not mean that the magistrate must write the affidavit or administer the oath to affiant. It means an affidavit must be laid before a magistrate, and that the magistrate acting under said affidavit order a warrant issued for the arrest of the person charged with the crime. This was done in this instance, as appears from the record. Moreover, the oath was administered to affiant on the 16th day of July, 1930, and the copy of the record of the district court of Louisiana for use in this proceeding is certified by the clerk on the same day. It follows that the order of the judge of said court that a warrant issue for the arrest of petitioner must have been made on the same day. From this we presume the affidavit was made in court. In re Keller (D.C.) 36 F. 681, loc. cit. 684; Collins et al. v. Traeger (C.C.A.) 27 F.2d 842, loc. cit. 844. The judge of the district court of Louisiana is without question a magistrate within the meaning of the act of Congress, and we think the copy of the affidavit produced is a compliance with said act."—Gugenhine v. Gerk, 326 Mo. 333, 31 S.W.2d 1 (1930).

When we bear in mind that the appellant is not being deported to a place beyond the rule of law and that Georgia has a right to construe its laws, we see no need to make an examination into procedural technicalities beyond seeing that the proper papers are produced. State ex rel. Stephenson v. Ryan, 235 Minn. 161, 50 N.W.2d 259.

The judgment below is

Affirmed.