45 N.J. Super. 191 (1957)
131 A.2d 895
FRANK RAU, WARREN DAVIDSON, JAMES KIERNAN AND RONALD KEITH KRAMER, PLAINTIFFS,
v.
LLOYD McCORKLE, WARDEN OF THE STATE PRISON, TRENTON, NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided May 10, 1957.
*192 Mr. Frank P. Addas, attorney for the petitioners.
Mr. Eugene T. Urbaniak, Deputy Attorney-General, attorney for the defendant.
*193 Mr. C. William Caruso, Assistant Prosecutor, Essex County.
Mr. Hyman Isaac, Assistant Prosecutor, Union County.
Mr. Frank J.V. Gimino, Assistant Prosecutor, Hudson County.
DUFFY, J.C.C. (temporarily assigned).
The above-named plaintiffs, by verified petition, applied for writ of habeas corpus on the grounds; first, that they are illegally detained in State Prison at Trenton, New Jersey, predicated upon their challenge to the legal propriety of their extradition to New York to answer criminal charges while they were then serving sentences in a New Jersey penal institution. They contend that the surrender of their persons to the New York authorities under such extradition proceedings constituted a pardon of their New Jersey criminal offenses because no statutory authority exists for the Governors of the respective states to enter into an agreement for the return of persons so surrendered unless the crime allegedly committed in the demanding state be murder. Here, the charged crime was robbery. Secondly, they argue that their constitutional rights of due process have been violated.
I appointed Mr. Frank P. Addas as counsel for the plaintiffs in these proceedings pursuant to their request for legal aid. I directed the issuance of the writ of habeas corpus (N.J.S. 2A:67-17) and conducted a hearing (N.J.S. 2A:67-28) to inquire into the meritorious grounds for their detention in State Prison.
The background history of this case follows: The Governor of the State of New York by a document dated February 19, 1954 made a demand upon the Governor of New Jersey for the extradition of the four named plaintiffs (and another individual named Dominick Bonomo who is not a party to these proceedings) to answer certain criminal charges lodged against them in New York. The Governor of New Jersey honored the above requisition on April 8, 1954 and, on the same date, issued his warrant for the deliverence of the present plaintiffs and Bonomo to the *194 duly authorized agents of the Richmond County, New York, District Attorney's office. On April 16, 1954 the Governor of New Jersey by executive order stayed the return of the five above named pending their arraignment in the proper court in Monmouth County, New Jersey, to plead to an indictment charging them with the crime of carrying concealed weapons (N.J.S. 2A:151-41). On the same date criminal proceedings, by way of open indictments against the five named above, also awaited disposition in Union, Essex and Hudson Counties, all in New Jersey. I will discuss the indictments at greater length, infra.
Contemporaneously with the above-described extradition proceedings, Governor Dewey of New York and Governor Meyner of New Jersey entered into an agreement, endorsed by the former on March 20, 1954 and by the latter on March 29, 1954, wherein it was recited that the "said James Kiernan, Ronald Keith Kramer, Warren Davidson and Frank E. Rau are now confined in the Hudson County Jail awaiting trial for crime of robbery in the first degree," and further provided:
"Now, therefore, I, Robert B. Meyner, as Governor of the State of New Jersey, do hereby agree with Thomas E. Dewey, as Governor of the State of New York, for the extradition of said Dominick Bonomo, James Kiernan, Ronald Keith Kramer. Warren Davidson and Frank E. Rau, to the State of New York before the conclusion of the term of sentence now being served by Dominick Bonomo in the State of New Jersey, and before the trial of James Kiernan, Ronald Keith Kramer, Warren Davidson and Frank E. Rau in the State of New Jersey, upon the express condition that the said Dominick Bonomo, James Kiernan, Ronald Keith Kramer, Warren Davidson and Frank E. Rau shall be promptly brought to trial in said State of New York, and upon the further express condition that the said Dominick Bonomo, James Kiernan, Ronald Keith Kramer, Warren Davidson and Frank E. Rau be returned promptly to the State of New Jersey, at the expense of the State of New York, as soon as the prosecution in the State of New York is terminated, and upon such return Dominick Bonomo shall be delivered into the custody of the Warden of the New Jersey State Prison for completion of his term of sentence in the State of New Jersey; and James Kiernan, Ronald Keith Kramer, Warren Davidson and Frank E. Rau shall be delivered into the custody of the Warden of the Hudson County Jail to await trial in the State of New Jersey."
*195 The Governors' agreement further covenanted that "the aforesaid express conditions upon which the application for the extradition of the said Dominick Bonomo, James Kiernan, Ronald Keith Kramer, Warren Davidson and Frank E. Rau are granted shall be in all respects fulfilled and complied with and expressly accepted as terms and conditions of said extradition."
The four plaintiffs herein, by verified complaints dated June 10, 1954 and filed with the Mercer County Court on June 30, 1954, made application for writs of habeas corpus "for the purpose of testing the validity of the extradition proceedings" outlined above. The writs issued and a hearing was conducted before Mercer County Court Judge Bennett on July 26, 1954. Copies of the complaints and a transcript of the hearing before Judge Bennett were received in evidence as exhibits in the case before me. I note that counsel for the present plaintiffs in the Mercer County proceedings directed his main argument towards the right of the Governor of this State to consent to the extradition to the demanding state of prisoners then serving jail sentences in New Jersey unless the crime charged be murder. Judge Bennett dismissed the writ and directed that Rau, Davidson, Kiernan and Kramer be turned over to the New York authorities under Governor Meyner's extradition warrant. I will say in passing that I am aware that at common law the doctrine of res judicata did not apply in habeas corpus proceedings, In re Sabongy, 18 N.J. Super. 334, 340 (Cty. Ct. 1952), although a prior decision is not without weight on a later application. State v. Pohlabel, 40 N.J. Super. 416, 422 (App. Div. 1956).
As noted earlier, in the case at bar, plaintiffs dispute the statutory right of the Governor of New Jersey to enter into agreement with the Governor of New York for their extradition while they were then serving prison sentences in New Jersey. They insist that section 10 of the Uniform Criminal Extradition Act (N.J.S. 2A:160-10) applies only where the crime charged in the demanding state is murder. They contend further that if resort was *196 had to section 27 (N.J.S. 2A:160-27, quoted below) of the act no provision is contained therein for the return of the fugitives to the asylum state after completion of the criminal proceedings in the demanding state.
"2A:160-27. Extradition of persons pending outcome of criminal prosecution in this state. If a criminal prosecution has been instituted against such person under the laws of this state and is still pending, the governor, in his discretion, either may surrender him or demand of the executive authority of another state or hold him until he has been tried and discharged or convicted and punished in this state."
In interpreting the above section which is common among the Uniform Criminal Extradition Acts that have been adopted by 40 of the states, 9 U.L.A. (Supp.) 93, it has been held that this section was not enacted for the benefit of the fugitive from justice but rather for the benefit of the state. State ex rel. Cutshaw v. Smith, 127 N.E.2d 633 (Ohio App. Ct. 1953).
It is obvious that the extradition of the present plaintiffs to New York occurred under section 33 (N.J.S. 2A:160-33) of our Extradition Act, which, incidentally is verbatimly similar to the provisions of the New York law. (N.Y. Code of Criminal Procedure, sec. 832). The section reads as follows:
"2A:160-33. Extradition of persons imprisoned or awaiting trial in another state; agreement to return to state from which extradited. When it is desired to have returned to this state a person charged in this state with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another state, the governor of this state may agree with the executive authority of such other state for the extradition of such person before the conclusion of such proceedings or his term of sentence in such other state, upon condition that such person be returned to such other state at the expense of this state as soon as the prosecution in this state is terminated."
It must be noted that Governor Dewey initiated the extradition proceedings against the four named plaintiffs based upon the authority conferred upon him under section 832 *197 of the New York Code of Criminal Procedure. It is a matter of comity between the states and resorted to frequently under a reciprocity arrangement. As an illustrative example, in the recent case of Commonwealth ex rel. Hauser v. Seip, 385 Pa. 545, 124 A.2d 110, 115 (Sup. Ct. 1956), Governor Meyner made demand upon the Governor of Pennsylvania pursuant to section 33 quoted above for the surrender of a prisoner then serving a robbery sentence in the Dauphin County (Pa.) Prison to answer a criminal charge of willful neglect lodged against him in New Jersey.
The court in its opinion concluded:
"The Governor [of Pennsylvania] had discretionary power under § 19 of the Uniform Extradition Act of 1941, 19 P.S., § 191.19, either to grant forthwith New Jersey's application for extradition of the accused, or defer action until the accused was completely punished by serving his sentence: Commonwealth ex rel. Accobacco v. Burke, 1948, 162 Pa. Super. 592, 597, 60 A.2d 426. The Governor of our Commonwealth, in the exercise of his discretion, has granted the application for immediate extradition, and therefore under our order disposing of the relator's petition for writ of habeas corpus the said relator will accordingly be subject to extradition."
To like effect see People ex rel. Seiler v. Warden of the City Prison, 102 N.Y.S.2d 969 (Sup. Ct. 1951), where the demand of the Governor of New Jersey for the extradition of a fugitive who was awaiting criminal trial in New York was honored by the Governor. See, also, Werntz v. Looney, 208 F.2d 102 (10 Cir. 1953).
Present plaintiffs contend also that the agreement by Governor Meyner consenting to their extradition to New York constituted or acted as a pardon of their New Jersey criminal offense. The answer to this argument is contained in section 8 of our Uniform Criminal Extradition Act (N.J.S. 2A:160-8) which provides:
"2A:60-8. Effect of article as to waiver by and rights, powers and privileges of this state. Nothing in this article contained shall be deemed to constitute a waiver by this state of its right, power or privilege to try such demanded person for crime committed within this state, or of its right, power or privilege to regain custody of such person by extradition proceedings or otherwise for the purpose *198 of trial, sentence or punishment for any crime committed within this state, nor shall any proceedings had under this article which result in, or fail to result in, extradition be deemed a waiver by this state of any of its rights, privileges or jurisdiction in any way whatsoever."
The above statute indicates conclusively that by reason of its consent surrender of the present plaintiffs to New York under the extradition proceedings, New Jersey did not waive or forfeit any of its rights to regain the persons surrendered "for the purpose of trial, sentence or punishment for any crime committed within this state." The terms of the above section unequivocally eliminate the contention that a pardon attaches to the surrender.
In this connection, the opinion of the court expressed in Werntz v. Looney [208 F.2d 104], supra is pertinent:
"It is equally well established that a prisoner may be taken from the custody of one sovereign, with its consent, to be tried in the courts of another without the loss of the right to possession of the prisoner. * * *
"`As an easy and flexible means of administering justice and of affording each sovereignty the right and opportunity to exhaust its remedy for wrongs committed against it, there has evolved the now well established rule of comity which is reciprocal, whereby one sovereignty having exclusive jurisdiction of a person may temporarily waive its right to the exclusive jurisdiction of such person for purposes of trial in the courts of another sovereignty. Thus the offender is accorded a speedy trial and the administration of justice is expedited by the availability of evidence, which might through lapse of time be lost, but such a waiver is a matter addressed solely to the discretion of the sovereignty or its representative having power to grant it. Ponzi v. Fessenden (258 U.S. 254, 42 S.G. 309, 66 L.Ed. 607), supra, and Ex parte Aubert, D.C., 51 F.2d 136. The privileges granted by this flexible rule of comity should and must be respected by the sovereignty to which it is made available, and this respectful duty is reciprocal, whether federal or state, because neither sovereignty has the power to override it. Under the free exercise of this rule, no right or immunity granted by the constitution, laws or treaties of the United States is invaded or impaired.'"
Present plaintiffs further attack the agreement made between the Governors of New York and New Jersey and executed by the latter on March 29, 1954, on the grounds *199 that it is founded on a faulty premise when it recited "Whereas, said James Kiernan, Ronald Keith Kramer, Warren Davidson and Frank E. Rau, are now confined in the Hudson County Jail, at Jersey City, New Jersey awaiting trial for the crime of Robbery in the first degree." As a matter of fact, they argue that they were then confined in the Hudson County Jail awaiting sentence by me, and not trial. However, they conveniently forget to mention the indictments which were open against them in Hudson County on the effective date of the Governors' agreement, and others which awaited disposition in various other New Jersey counties.
The status of each plaintiff regarding indictments in this State as it appears from the records on March 29, 1954 (effective date of Governors' agreement) and their ultimate disposition follows:
Frank Rau
Hudson County  Had pleaded non vult on December 1 and 2, 1953 to three indictments charging armed robbery and three indictments charging breaking, entering and larceny. On March 26, 1954 I sentenced Rau to a minimum of 10 and a maximum of 15 years in State Prison on each of the robbery indictments, to run concurrently. On the breaking, entering and larceny indictments I sentenced him to a minimum of three and a maximum of five years in State Prison, to run concurrently with each other and concurrently with the sentences imposed on the robbery indictments.
Essex County  On March 31, 1954 Rau retracted and pleaded non vult to an indictment charging robbery. On May 13, 1954 he was sentenced to a minimum of seven years and a maximum of ten years in State Prison, to be served consecutive to term which he was then serving in State Prison.
Union County  On May 14, 1956 Rau retracted and pleaded non vult to two indictments charging robbery, two indictments charging larceny of motor vehicle, and one indictment charging breaking and entering. On the same *200 day he was sentenced to a minimum of two years and a maximum of three years in State Prison on each of the above indictments, with sentences to commence immediately and to run concurrently with each other and with terms then being served in State Prison.
Monmouth County  On July 13, 1954 Rau retracted and pleaded guilty to an indictment charging carrying concealed weapons. He was sentenced on the same day to a minimum of one year and a maximum of two years in State Prison, to be served concurrently with the terms then being served in State Prison.
Warren Davidson
Hudson County  On December 2, 1953 a jury found him guilty of breaking, entering and larceny. On March 26, 1954 he retracted and pleaded non vult to two indictments charging robbery while armed, and one indictment charging breaking, entering and larceny. On April 7, 1954 I sentenced him to a minimum of 12 and a maximum of 15 years in State Prison on each of the robbery indictments, to be served concurrently. On the breaking, entering and larceny indictments, I sentenced him to a minimum of five and a maximum of seven years in State Prison, concurrently with each other and concurrent with the sentences imposed on the robbery indictments. On April 20, 1954, on motion of the prosecutor, I dismissed two indictments charging breaking, entering and larceny. Again, on January 23, 1956, under similar circumstances, I dismissed an indictment charging aiding and abetting an escape.
Essex County  On April 26, 1954 Davidson retracted and pleaded non vult to an indictment charging robbery. On May 12, 1954 he was sentenced to a minimum of seven and a maximum of ten years in State Prison, to be served consecutive to term which he was then serving in State Prison.
Union County  On May 14, 1956 Davidson retracted and pleaded guilty to an indictment charging robbery, one charging burglary, and two charging larceny of motor vehicle On the same day he was sentenced to a minimum of two *201 years and a maximum of three years in State Prison, with sentences to commence immediately and to run concurrently with each other and with terms then being served in State Prison.
Monmouth County  Same date of retraction and same plea to same crime, with same sentence imposed as that described above for Rau.
James Kiernan
Hudson County  On December 2, 1953 a jury found him guilty of breaking, entering and larceny. On March 26, 1954 he retracted and pleaded non vult to an indictment charging robbery while armed. On April 7, 1954, on the robbery while armed indictment, I sentenced him to a minimum of 12 and a maximum of 15 years in State Prison. On the breaking, entering and larceny indictment, I sentenced him to a minimum of five and a maximum of seven years in State Prison, to run concurrently with the sentence imposed on the robbery indictment. On April 20 and 24, both in 1954, on motion of the prosecutor, I dismissed the following indictments against Kiernan: four charging robbery while armed, one breaking, entering and larceny, and one grand larceny.
Essex County  Same date of retraction and same plea to same crime, with same sentence imposed as that described above for Davidson.
Monmouth County  Same date of retraction and same plea to same crime, with same sentence imposed as that described above for Rau and Davidson.
Ronald Keith Kramer
Hudson County  On December 2, 1953 a jury found him guilty of breaking, entering and larceny. On March 26, 1954 he retracted and pleaded non vult to four indictments charging robbery while armed, one charging breaking, entering and larceny, and one charging grand larceny. On April 7, 1954 I sentenced him to a minimum of 15 and a maximum of 20 years in State Prison on each of the robbery indictments, to be served concurrently. On the breaking, entering and larceny indictments, I sentenced him to a *202 minimum of five and a maximum of seven years in State Prison on each indictment, to be served concurrently with each other and concurrently with the sentences imposed on the robbery indictments. On April 20, 1954, on motion of the prosecutor, I dismissed nine indictments charging robbery while armed, two charging breaking, entering and larceny, and two charging grand larceny. On January 23, 1956, under similar circumstances, I dismissed an indictment charging aiding and abetting an escape.
Essex County  On April 26, 1956 he retracted and pleaded non vult to two indictments charging robbery. On May 12, 1956 he was sentenced to a minimum of seven and a maximum of ten years in State Prison, to be served concurrently with each other and consecutively to term or terms then being served in State Prison.
Union County  On May 14, 1956 he retracted and pleaded guilty to two indictments charging robbery while armed, two indictments charging burglary, two indictments charging larceny of motor vehicle, and one indictment charging breaking and entering; sentences similar to those imposed on Rau and Davidson were levied upon Kramer by the court on May 14, 1956.
Monmouth County  Same date of retraction and same plea to same crime, with same sentence imposed as that described above for Rau, Davidson and Kiernan.
An examination of the above records establishes that the language employed in the Governors' agreement, that the named plaintiffs "are now confined in Hudson County Jail at Jersey City, New Jersey awaiting trial for the crime of Robbery in the first degree" can be faulted only for use of the words "Robbery in the first degree." Our statute describes the crime as "Robbery while Armed." Without quibbling over the exact phraseology, the crime alleged is a felony in New York and a high misdemeanor in New Jersey, and comprises a serious crime. Surely, justice must not be sacrificed by blind adherence to strict technicalities, where a crime is described in slightly different language in the criminal code of one state from that used in the criminal *203 statutes of another. Especially is this so where the misnomer occurs by reference only to the crime for which a fugitive is allegedly awaiting trial in the asylum state. The misnomer in no way prejudiced any rights of plaintiffs. The crime or crimes to which they were called upon to plead were properly identified in the indictments returned in the respective jurisdictions.
I will next consider the argument of present plaintiffs that their "due process" rights were violated in the extradition proceedings.
"The essential elements of `due process of law' as guaranteed by the Fourteenth Amendment of the Federal Constitution, are appropriate notice of the judicial action and adequate opportunity to be heard." Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932).
"It is designed to shield the litigant against arbitrary action in disregard of essential right and justice." Brown v. New Jersey, 175 U.S. 172, 20 S.Ct. 77, 44 L.Ed. 119 (1899).
"Due process in judicial proceedings implies action in conformity with the general law, based upon evidence, and after a full hearing upon notice to the parties affected and opportunity to be heard." Snyder v. Com. of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1933).
The above quotations were extracted from the opinion of Mr. Justice Heher in Hyman v. Muller, 1 N.J. 124 (1948), wherein he discusses at some length the due process rights guaranteed a person under the Federal Constitution.
As related earlier in this opinion, plaintiffs, by habeas corpus proceedings in Mercer County Court, challenged the legal propriety of their extradition to New York. Their efforts were unsuccessful. After they had been remanded to Richmond County, New York, under the described extradition proceedings and were therein awaiting their criminal trial, plaintiffs on October 7, 1954 made application, through counsel, in the New York Supreme Court, for writ of habeas corpus on the grounds that their extradition to New York was illegal. After hearing, the writ was dismissed by Mr. Justice Benvenga on October 29, 1954. The court's opinion of dismissal is reported in the New York Law Journal under *204 date of November 1, 1954. Plaintiffs then appealed to the Appellate Division, People ex rel. Bonomo v. Ruthazer, 285 App. Div. 934, 139 N.Y.S.2d 886, which court on March 16, 1955, by unanimous opinion, affirmed the decision below, 285 App. Div. 1049, 141 N.Y.S.2d 507. On April 27, 1955 the Appellate Division denied plaintiffs' motion for leave to appeal to the Court of Appeals, 308 N.Y. 1054, 127 N.E.2d 599. On June 3, 1955 the Court of Appeals denied plaintiffs' motion for review. On February 1, 1956 Mr. Justice Markewich of the New York Supreme Court dismissed a writ of habeas corpus, in which hearing plaintiffs had again attacked the legality of their extradition proceedings.
Review of the above leads only to the one inescapable conclusion that the plaintiffs have indeed had their day in court and opportunity to be heard, and thus their constitutional rights of due process have not been violated.
On January 30, 1956 plaintiffs appeared before Justice Farrell W. Kane, in the County Court of Richmond County, New York. After retraction, they entered pleas of guilty to indictment charging grand larceny, second degree. The court thereupon suspended sentence upon condition that they be remanded to New Jersey to serve the terms in New Jersey State Prison which had previously been imposed upon them.
For the reasons stated above, I will dismiss the writ of habeas corpus in the instant case.