STEPHEN D. GOLLA, Appellant, v. STATE OF DELAWARE, Appellee.

(*April* 7, 1960.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Robert C. O'Hora* for petitioner, appellant.

*Clement C. Wood*, Chief Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 75, 1959.

BRAMHALL, J.:

This appeal raises the question of the right of the Pennsylvania prison authorities to extradite petitioner to serve the remainder of his sentence in Pennsylvania after the Pennsylvania authorities had released petitioner to Delaware police officers for trial and sentence in this State.

Petitioner, while serving a prison term from eight to sixteen years for armed robbery in the State of Pennsylvania, was paroled by the Pennsylvania prison authorities on December 3, 1949. Prior to his release, petitioner signed a parole agreement that should he commit a crime in Pennsylvania or any other state he could be compelled to serve the balance of his maximum term and that if he should be arrested in another state for a crime committed during the period of his parole, he would waive extradition and would not resist but would return to the State of Pennsylvania. On October 4, 1952, while on parole to the Pennsylvania authorities, petitioner was arrested in this State upon a charge of assault with intent to rob. On December 24, 1952, upon being released on bond, appellant returned voluntarily to Pennsylvania. On January 31, 1953, after petitioner had voluntarily reported to the Pennsylvania parole authorities, he was arrested as a technical parole violator. Petitioner remained in prison in Pennsylvania until March 4, 1953, when he was released by the Pennsylvania prison authorities to two Delaware police officers, acting as agents for petitioner's bondsman on the Delaware charge, and returned to this State. On June 23, 1953, petitioner was found guilty in the Superior Court of New Castle County of assault with intent to rob and sentenced to a term of nine years and six months in prison. On July 3, 1953, a fugitive warrant was lodged against petitioner with the Del-

aware prison authorities by the parole authorities of the Commonwealth of Pennsylvania. When petitioner became eligible for parole on July 24, 1959, he was taken before the Municipal Court of the City of Wilmington and granted a hearing on the extradition requested by the Pennsylvania authorities. On October 8, 1959, petitioner filed a petition for a Writ of Habeas Corpus in the Superior Court of New Castle County. On December 12, 1959, that Court denied his petition. Petitioner appeals to this Court.

Petitioner resists extradition on the ground that he is not a fugitive from justice because (1) his removal to Delaware in 1953 was involuntary, and (2) because the actions of the Pennsylvania authorities in delivering him to his bondsmen was a waiver of any Pennsylvania jurisdiction to punish him further.

(In a prior appeal proceeding in this Court the facts developed indicated that petitioner's return to this State in 1953 was with his consent. See *Golla v. State*, 11 *Terry* 497, 138 *A.* 2d 137. But for our present purpose we shall assume that petitioner's return was involuntary.)

(1) The first contention, we think, is answered by the provisions of the Uniform Extradition Act, 11 *Del. C.*, Ch. 25. Section 2505(b) of that act provides that the Governor of this state may surrender a prisoner even though such prisoner left the demanding state involuntarily. While it is true that the Federal Constitution and the Laws of Congress passed in pursuance thereof do not provide for the extradition of any person unless he has fled from or left the demanding state as a fugitive therefrom, yet under the Uniform Criminal Extradition Act, adopted in this and nearly every other state, the words "fugitive from justice" have been given a much broader interpretation. In 4 *Wharton's Criminal Law and Procedure*, § 1644, the writer says:

"The almost universal adoption of the Uniform Criminal Extradition Act has virtually made academic consideration of whether the accused has fled from the demanding state."

Since Pennsylvania seeks to extradite petitioner as a parole violator, the compact relating to out-of-state parole supervision is also applicable. Act of April 7, 1937, 41 *Del. L.*, Ch. 215, 11 *Del. C.* § 7731.

This statute permits the duly constituted judicial and administrative authorities of any state, a party to the compact, to permit any person convicted of an offense within such state and placed on probation or released on parole to reside in any other state, a party to this compact. It is further provided therein in paragraph (3) that duly accredited officers of a sending state may enter a receiving state and apprehend and retake such persons; that the decision of the sending state shall be conclusive and not reviewable within the receiving state, provided that such probationer or parolee may be retained by the receiving state until discharged from prosecution or imprisonment for an offense committed within the receiving state. Pennsylvania has a similar statute. 61 *P. S.* § 321.

The purpose of these statutes is to prevent criminals from escaping punishment. They are intended to provide a summary proceeding to enable the different states to assist one another in bringing to trial persons who have been accused of crime in a state but who are beyond its reach in an attempt to bring them to justice. The courts generally have given these statutes the construction necessary to effect the purpose of their enactment. *Biddinger v. Commissioner of Police of City of New York*, 245 *U. S.* 128, 38 *S. Ct.* 41, 62 *L. Ed.* 193; *Lascelles v. State of Georgia*, 148 *U. S.* 537, 13 *S. Ct.* 687, 37 *L. Ed.* 549; *Roberts v. Reilly*, 116 *U. S.* 80, 94, 6 *S. Ct.* 291, 29 *L. Ed.* 544. The inquiry is one of fact for the determination of the Governor, whose decision cannot be overruled unless it is clear beyond dispute that the prisoner was not a fugitive under the law. *Moulthrope v. Matus*, 139 *Conn.* 272, 93 *A.* 2d 149.

Petitioner, conceding that there is a conflict of authorities on the question as to whether he may be extradited in a case

where, as here, he did not actually flee the jurisdiction, but was removed therefrom to this State against his will, contends that those authorities which answer this question in the negative constitute the better law.

■ While we agree that there is such a conflict of authorities, as petitioner contends, we think that the better, and by far the majority, rule is that set forth in those cases holding that the mode or manner of a prisoner's departure generally does not affect his status as a fugitive and that the fact that it was involuntary or, even under legal compulsion, will not prevent his extradition. *Application of Robinson, Nev.*, 322 *P.* 2d 304; *In re Langley, Okl. Cr.*, 325 *P.* 2d 1094; *Johnson v. Lowry*, 183 *Ga.* 207, 188 *S. E.* 23; *People ex rel. Pepe v. Ashworth, Sup.*, 31 *N. Y. S.* 2d 225.

■ It has been frequently held by competent authority that a prisoner is a fugitive from justice and must be delivered to the demanding state when he has departed from the state regardless of the manner of its accomplishment. *State ex rel. Shapiro v. Wall*, 187 *Minn.* 246, 244 *N. W.* 811, 85 *A.L.R.* 114; *Moulthrope v. Matus*, 139 *Conn.* 272, 93 *A.* 2d 149, certiorari denied 345 *U. S.* 926, 73 *S. Ct.* 785, 97 *L. Ed.* 1357. The Supreme Court of the United States in the case of *Roberts v. Reilly, supra*, held one to be a fugitive from justice who has committed a crime within a state and is found in the territory of another state when sought to be subjected to criminal process.

Petitioner's first contention is rejected.

■ (2) Petitioner's second contention is that the facts of this case justify the conclusion that at the time he was released by the Pennsylvania authorities he was in custody either under sentence for violation of parole or under his original sentence, and that his discharge was in law a waiver of the remaining part of his sentence—in effect a commutation of the sentence. *People ex rel. Barrett v. Bartley*, 383 *Ill.* 437, 50 *N. E.* 2d 517, 147 *A. L. R.* 935.

In such a case, he argues, the right of the demanding state to extradite him depends on a specific agreement between the Governors of the two states under § 2505(a) of the Uniform Extradition Act. *People ex rel. Brunner v. Dominy, Sup.,* 191 *N. Y. S.* 2d 46. This statute provides:

"When it is desired to have returned to this State a person charged in this State with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another state, the Governor of this State may agree with the Executive Authority of such other state for the extradition of such person before the conclusion of such proceedings or his term of sentence in such other state, upon condition that such person be returned to such other state at the expense of this, State as soon as the prosecution in this State is terminated."

That section of the Uniform Act is obviously designed to cover the type of release that occurred in the *Bartley* case.

It is clear that the procedure under § 2505(a) was not followed in the instant case. Petitioner was taken back to Delaware on demand of his bondsmen. But the Pennsylvania parole authorities, as appears from the record, state that petitioner was not in custody under his original sentence, or under any sentence. Petitioner was held only as a violator of parole and was in the custody of the parole board pending further action. Such a release in such circumstances does not constitute a waiver of jurisdiction by the State subsequently demanding the prisoner's return. *Ex parte Anthony,* 198 *Wash.* 106, 87 *P.* 2d 302.

Petitioner makes the further argument:

When he was committed as a parole violator his parole agreement was in law revoked, his agreement to waive extradition was voided, and he was thereafter in custody serving a sentence, either for violation of parole or for the crime for which he was originally sentenced.

The record does not support this contention. His parole was not revoked until August 4, 1959, and there is no record of any sentence for violation, or any record of reimposition of the former sentence. Petitioner asks us to construe the custody of the Pennsylvania parole authorities, and their release of petitioner to Delaware, as constituting, first, a sentence, and, second, an interruption of that sentence amounting to a commutation. The interpretation and legal effect of the actions of the Parole Board are questions for the Pennsylvania courts, as the court below indicated. *McTigue v. Rhyne*, 180 *Kan.* 8, 298 *P.* 2d 228; *Moulthrope v. Matus*, 139 *Conn.* 272, 93 *A.* 2d 149. Certainly we cannot say as a matter of law that such action was a relinquishment of jurisdiction.

Petitioner has failed to show any ground for refusing extradition.

The judgment of the Superior Court is affirmed.