**Katie Browder STRICKLIN, Plaintiff-in-Error,**

**v.**

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

Jan. 26, 1973.

Certiorari Denied by Supreme Court July 16, 1973.

W. W. Lackey, Savannah, Willard E. Smith, Henderson, Jack Norman, Nashville, for plaintiff in error.

David M. Pack, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, John L. Williams, Dist. Atty. Gen., Huntingdon, Robert B. Smith, Asst. Dist. Atty. Gen., Savannah, for defendant in error.

## OPINION

DWYER, Judge.

Katie Browder Stricklin, daughter-in-law of the deceased, was convicted by a jury for committing the offense of murder in the first degree, with a resulting punishment of confinement in the state penitentiary for twenty years and one day.

After the trial court overruled her motion for new trial, retained counsel seasonably perfected her appeal from the judgment entered on the verdict.

On her behalf counselors have filed several assignments of error contending the verdict and judgment were entered contrary to the law. They contend the evidence is insufficient, the trial court erred in refusing to place the witnesses under the rule and in waiting until after each had testified before cautioning him to refrain from discussing his testimony with other witnesses, and lastly, the trial court erred in allowing into evidence proof of another crime.

In order to bring into proper focus the assignments and our treatment of same we will narrate briefly our findings of the evidence as reflected from our review of this record.

On Sunday, May 30, 1971, the deceased and his wife resided on Walnut Street in Savannah. They were preparing to have Sunday dinner. Dining with them that day were a daughter, Mary Vickery; a son, Ray Stricklin; and the defendant, Ray Stricklin's wife. The wife of the elderly deceased, Mrs. Mollie Stricklin, was preparing the meal. The defendant served the tea that was consumed with the meal.

Later that day, while visiting her brother, the deceased and his wife became ill, vomiting and suffering from diarrhea. That evening they were both ordered to the hospital. Mrs. Stricklin was treated and dismissed. The deceased was admitted to the hospital as a precautionary measure because of his age of 81 years and his condition of hypertension and hardening of the arteries.

The family attended the deceased and the proof reflects that on the following Wednesday morning his condition was markedly improved. The record reflects that on the same day, while both the defendant and Mary Vickery were at the hospital caring for the deceased, Mrs. Vickery left the room and upon her return noticed the defendant giving some Coca-Cola to the deceased. She assisted the defendant and helped administer this coke to the deceased. Upon consumption of a portion of the coke, the deceased immediately became seriously ill once again. His condition deteriorated and his demise took place the next morning around 7:30 a. m.

The record further reflects that the defendant, when attending the deceased, would raise the covers on the bed and laughingly exclaim, "he has done it again" when the deceased was inflicted with diarrhea.

The deceased was buried on the following day, Friday, and members of the family had gathered at the home site. Mrs. Stricklin, still ailing from her Sunday attack, had been examined by a physician who recommended a soft diet of jello, soft drinks and soups. The record reflects that his opinion at that time was she was suffering from a virus.

On Sunday, June 6, the defendant and her husband purchased some soft drinks and jello. The defendant made a bowl of jello and poured some into a small bowl, exclaiming to other relatives that the small bowl was for Mrs. Stricklin and for her to have some.

That following Monday morning Mrs. Stricklin related that she got some jello out of the refrigerator and took some. Soon afterwards she started vomiting and suffering from diarrhea and as a result was taken to the Hardin County Hospital. The following day she was transferred to the Baptist Hospital in Memphis. There a

urine analysis test revealed positive traces of arsenic.

The record then reflects that in the presence of the defendant the doctor made this finding known with instructions that other members of the family still in the house in Savannah should move out and the health department should be notified. At that time the defendant stated that if it was in the jello she was guilty.

She then called Savannah and told the son of the deceased to throw all the prepared food stuff out. She emphasized the jello and relish and repeated this instruction.

However, the son did not dispose of the food stuff, but instead placed it in an ice chest and brought it to Memphis.

The son related that at the hospital he and the defendant's husband started to the car to get the food when the defendant came running after them and began plying them with questions about arsenic and whether or not the doctors knew how one could obtain it. She then appeared to be very anxious to get into the car. So anxious that the son was required to instruct her to turn loose of the car door so that he could unlock it. When the door was opened the defendant removed the chest, set it on the trunk, and started examining the items. She then started carrying the chest across the street to the hospital. The son finally took it, saying it was too heavy for her.

An analysis of the food by the medical examiner's office in Memphis revealed negative results to all other food stuff, but positive results as to the jello for arsenic.

The body of the deceased was then ordered exhumed. An autopsy was performed which revealed a lethal dose of arsenic in the kidneys, liver and gastric tract in the amount of $\frac{1}{6}$ of an ounce. The cause of death was then listed as arsenic poisoning.

Warrants for the defendant's arrest charging her with murder and attempted murder were issued. When these warrants were served and after being fully advised of her rights in relation to the accusation she related: (a) she might have done this thing, she didn't remember doing it; (b) she probably did this but was puzzled as to what and where she obtained anything to do it with; (c) she didn't know what she used if she used anything; (d) she must have done all of this.

The record further reflects that no arsenic was ever found on the premises, nor had there ever been any arsenic kept on the premises.

The defendant did not testify and offered no proof.

■ On appellate review the record is reviewed by us under rules of settled law which state that the defendant has lost her presumption of innocence which clothes her at the trial as a result of the verdict and the judgment entered in overruling her motion for new trial. That presumption is replaced with a presumption of guilt. The verdict and judgment approved by the trial court has put the stamp of approval on the accreditation of the theory of the state with accompanying discredit of the defendant's theory. It has settled the issue of the credibility of the witnesses offered by the state. We are not to disturb this verdict unless the defendant shows here that the evidence preponderates against her guilt and in favor of her innocence. See Hornsby v. State, Tenn.Cr.App., 479 S.W. 2d 653, 654.

■ In the assignment pertaining to the insufficiency of the evidence it is urged that the corpus delicti has not been made out and that the connecting agency of the defendant with the death of Mr. Stricklin was not linked by the proof. The reasoning advanced is that no animosity was shown to exist between the defendant and the deceased or his wife, and we agree that the record reflects the opposite of animosity. They also reason that no motive has been advanced or even intimated under the

facts as proven. We are satisfied that no motive has been shown and agree with counsel that this is unnecessary except in weighing the credence of the evidence. See Holder v. State, 119 Tenn. 178, 199, 200, 104 S.W. 225. However, we are completely satisfied that the corpus delicti has been made out by this uncontradicted proof that a lethal dose of arsenic had been orally ingested which caused the death of the decedent, and the complete lack of evidence that there was any accidental ingestion of arsenic by the decedent.

▮ We then examine this circumstantial evidence to see if the connection of the defendant with the unlawful death has been made out by the evidence adduced and if there is a sufficiency of this evidence to sustain the verdict and judgment: (See Jamison v. State, 209 Tenn. 426, 432, 433, 354 S.W.2d 252) (1) on May 30, 1971, the defendant prepared and poured the tea into glasses for the decedent and his wife; (2) at the hospital on the following Wednesday, when he was vastly improved, the defendant gave the decedent a coke to drink with resulting immediate convulsions and death early the following morning; (3) when the decedent had an attack of diarrhea the defendant would raise the cover and laughingly relate that, "he's done it again"; (4) the following Sunday, before any suspicion had been raised concerning the death of Mr. Stricklin, the defendant prepared some jello for Mrs. Stricklin and asked the others if it looked all right; (5) she then placed the jello, which was in two separate containers, in the refrigerator and specifically designated one of the containers as being for Mrs. Stricklin; (6) as the defendant left she told the ailing Mrs. Stricklin to be sure and eat some of it; (7) on Monday Mrs. Stricklin partook of the jello which resulted in vomiting and diarrhea necessitating confinement in the hospital and which ultimately led to the disclosure of arsenic in her urine; (8) upon hearing this the defendant stated that "if it was the jello, I am guilty"; (9) the defendant then called

Savannah and specifically stated to the son to throw out all the prepared food stuffs, and in particular the jello and relish; (10) these instructions pertaining to the jello were repeated; (11) at the hospital, when the defendant's husband and his brother left to get the food stuff from the car, she ran down the hall to them and began questioning them about arsenic; (12) while going to the car the defendant displayed great eagerness in getting to the ice chest and examining the contents; (13) she insisted on carrying the ice chest back to the hospital by herself, and did so until the son, realizing that it was too heavy for her, took it away from her; and finally, devastating as we view it, (14) when being arrested on the warrant charging her with this murder, the defendant related statements (a), (b), (c), and (d) as outlined in our summarization of the evidence.

▮ We concede that each of the factual circumstances in this case, when evaluated individually, has at least one reasonable explanation other than the one pointing toward the guilt of the defendant. However, the test is not whether each fact is proven beyond a reasonable doubt, but if enough facts are proven to satisfy a jury beyond a reasonable doubt. See Pruitt v. State, 3 Tenn.Cr.App. 256, 460 S.W.2d 385, 390, 391. When evaluated as a whole and in conjunction with the admissions made by the defendant at arrest, there is a sufficiency of the evidence from which the jury could and did properly make its determination of guilt. In short, the enumerated facts and circumstances are so closely interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone. See Crawford v. State, Tenn., 470 S.W.2d 610, 613.

The facts and circumstances in this case are a far cry removed from the circumstances found in Wrather v. State, 179 Tenn. 666, 169 S.W.2d 854, heavily relied upon by the defense. It is also noted in our review and examination of the entire record that these enumerated facts offered by the state were mostly unchallenged oth-

er than that the circumstances, by cross-examination, were put in the light of being insignificant facts or remarks made at the time. However, as related, the jury by its verdict has accredited these facts and circumstances to the defendant's detriment. We must not disturb or reverse this finding unless the evidence here preponderates against that finding. See Hornsby v. State, supra.

■ One final note should be made concerning the defense argument that no one saw the defendant administer or place the arsenic in the suggested vehicles of transportation for the poison—tea or coke—or in the jello which was proven to have contained it. It would be completely contrary to the stealth necessary to administer the deadly potion to do it openly and in a manner which would call attention to the fact. Excepting for detailed advantages of the medical profession, the decedent would still be in his grave and his cause of death labeled natural causes. This necessitates that the poisoning guilt, as is so often the case, be proven from facts and circumstances which are secondary in nature, but when considered as outlined, items (1) through (14) and (a), (b), (c), and (d), can be concluded to be sufficient evidence to sustain this verdict. See Jamison v. State, supra. The assignments pertaining to the sufficiency of the evidence are accordingly overruled.

■ Her next contention is that the trial court erred in not placing the witnesses under the rule. The record reflects that prior to trial the defendant, on motion, asked the court to instruct the witnesses to refrain from discussing the case prior to and subsequent to testifying. The court, on notification by the state that all the witnesses were not there at the start of the trial, was physically unable to issue the instructions. It did however admonish the witnesses after they had completed their testimony. We think this was sufficient. It must be realized that prior to indictment and trial, months may have elapsed in which the various witnesses to an event could have discussed the matter. It is only after testifying that we think the force of the rule comes into play to prevent the before and after witnesses from comparing notes and altering testimony that may be given. In any event, no prejudice has been shown here by the defendant that admonishing the witnesses afterwards was to his detraction. See Nance v. State, 210 Tenn. 328, 335, 358 S.W.2d 327. The assignment is accordingly overruled.

■ Lastly, the contention is made that the attempted murder of Mrs. Stricklin was evidence of another crime and therefore the trial court erred in allowing the proof into evidence over the defense counsel's objection. First, he urges that it was a subsequent crime and therefore not proper. There is no merit to this. See Thompson v. State, 171 Tenn. 156, 173, 101 S. W.2d 467. Second, he asserts that the evidence of the other crime is not clear and convincing. See Wrather v. State, supra. We disagree. We feel from the facts as outlined that the proof of the attempt on Mrs. Stricklin was clear and convincing. Third, he urges that it did not meet the test in *Wrather* concerning other crimes which, as we have related, is far removed from the facts found in this record. In *Wrather* the prior crimes and the crime at bar were years apart, failed to reflect any common scheme or design, and were not near enough in point of time so as to be part of the res gestae. However, in this record we are satisfied that the evidence was competent: (1) Mrs. Stricklin's continuing illness came about at the same time as the fatal illness occurred with the decedent; (2) the same deadly poison, arsenic, was administered to both; and (3) the jello prepared by the defendant and taken by Mrs. Stricklin contained arsenic. These facts reflect a common scheme, plan or system so related that proof of one tends to prove the other. See Thompson v. State, supra.

Further, it is competent to show and prove guilty knowledge as opposed to acci-

dent or misadventure. See Mays v. State, 145 Tenn. 118, 141, 238 S.W. 1096. As we view this assignment the offense as to Mrs. Stricklin is connected with the questioned offense case here. See Pruitt v. State, 3 Tenn.Cr.App. 256, 460 S.W.2d 385, 388, 389. In conclusion, it was competent to establish the identity of the defendant as the one who administered the poison.

In closing, at oral argument it was advanced that the defendant had been acquitted of the "other crime", the assault of Mrs. Mollie Stricklin. Hence, the evidence is therefore neither clear nor convincing. With this we disagree. The test is whether at the time of admission it is competent. By that standard it is or is not competent, not by what may have happened in months to come. This dehors adjunct of the assignment is without merit. The assignment is accordingly overruled.

The judgment of the trial court is affirmed.

WALKER, P. J., and OLIVER, J., concur.