487 So.2d 1195 (1986)
In the matter of the EXTRADITION OF Walter DIXON, a/k/a Frank Earl Ratcliff.
No. 86-121.
District Court of Appeal of Florida, Second District.
April 30, 1986.
*1196 Douglas A. Wallace, Sp. Public Defender, Bradenton, for appellant.
Jim Smith, Atty. Gen., and Andrea Smith Hillyer, Asst. Atty. Gen., Tallahassee, for appellee State of Florida.
PER CURIAM.
Walter Dixon, also known as Frank Ratcliff, appeals the denial of his petition for writ of habeas corpus. We reverse.
The facts surrounding Dixon's present confinement are not in dispute. While serving a twenty-five year sentence in Manatee County, Dixon escaped, eventually making his way to Mississippi. There he was arrested and indicted for burglary. Prior to trial on that charge, Dixon was extradited back to Florida to face the escape charge. For reasons unrelated to this appeal the twenty-five year sentence was vacated, and Dixon entered a negotiated plea to the escape charge. Then he was served with a warrant from Mississippi requesting his return to face the burglary charge. It is this warrant that Dixon unsuccessfully challenged by petitioning for habeas corpus. Pursuant to a stay order he remains detained in Florida pending this appeal.
First, Dixon argues that Mississippi effectively waived its right to reacquire jurisdiction over him when it permitted his return to Florida prior to the conclusion of its case against him. We are not persuaded by the authorities he cites, principally Anderson v. State, 386 P.2d 320 (Okla. Crim. App. 1963). The Anderson decision relied heavily upon In re Whittington, 34 Cal. App. 344, 167 P. 404 (1917), which has since been described as "clearly contrary to the weight of authority." In re Fedder, 143 Cal. App.2d 103, 111, 299 P.2d 881, 886 (1956). Anderson confuses the traditional definition of a "fugitive" as one who has consciously fled from justice with the broader concept of a fugitive as set forth in the Uniform Criminal Extradition Act.
The Uniform Criminal Extradition Act, which Florida has adopted as sections 941.01 through 941.30, Florida Statutes (1985), provides for the apprehension and return both of traditional "fugitives" and persons who, like Dixon, were transported *1197 to the asylum state involuntarily, including through extradition. See generally, 11 West's Uniform Laws Annotated 53. For example, if another state requests the extradition of a prisoner facing charges in Florida, this state may relinquish the prisoner forthwith or wait until the pending charges have been resolved. § 941.19, Fla. Stat. (1985). Surrender of the prisoner does not amount to a waiver of Florida's right to exercise jurisdiction over him in the future. § 941.27, Fla. Stat. (1985). No express reservation of the right to resume jurisdiction is necessary under the Uniform Act. See, e.g., Johnson v. Peterson, 1 Wash. App. 856, 466 P.2d 183 (1970). Accordingly, we reject this theory of waiver, as have other jurisdictions. See, e.g., Golla v. State, 52 Del. 433, 159 A.2d 585, cert. denied, 364 U.S. 481, 81 S.Ct. 78, 5 L.Ed.2d 64 (1960); Davis v. Rhyne, 181 Kan. 443, 312 P.2d 626 (1957); Crady v. Cranfill, 371 S.W.2d 640 (Ky. 1963); State ex rel. Gegenfurtner v. Granquist, 271 Minn. 207, 135 N.W.2d 447 (1965); Rau v. McCorkle, 45 N.J. Super. 191, 131 A.2d 895, affirmed, 47 N.J. Super. 36, 135 A.2d 224 (1957); Dodson v. State, 497 S.W.2d 757 (Tenn. 1973); Ex parte Christmas, 453 S.W.2d 146 (Tex. Crim. App. 1970).
We do find, however, that Dixon's second argument has merit. He contends that the Mississippi warrant is fatally defective because it characterizes him as a "fugitive from justice." The governor of an asylum state operating under the Uniform Act has a mandatory duty to extradite persons who have "fled from justice" voluntarily, provided the formal requisites of the demanding state's warrant are met. §§ 941.02, 941.03, Fla. Stat. (1985). In such cases, the only issues the prisoner may contest are whether he is the person named in the warrant and whether there is sufficient evidence to show he was in the demanding state at the time of the offense. See, e.g., State v. Cox, 306 So.2d 156 (Fla. 2d DCA 1974). Neither of these defenses has been raised by Dixon. On the other hand, section 941.05(2), Florida Statutes (1985), provides that the governor may order the arrest and transport of persons who have left the demanding state involuntarily. Dixon argues that he falls into this second category, and thus that it is within the governor's discretion to refuse to extradite him.
There do not appear to be any Florida cases construing this particular provision. Dixon cites People ex rel. Brunner v. Dominy, 22 Misc.2d 863, 191 N.Y.S.2d 46 (1959), wherein the petitioner had been extradited under compulsion from Florida to New York. When Florida demanded his return, its warrant similarly described him as a "fugitive," and the New York governor necessarily treated the request as mandatory. The appellate court held that the Florida warrant was invalid because it deprived the petitioner of the governor's exercise of discretion. See also, People ex rel. Bernheim v. Warden of the House of Detention for Men, 95 Misc.2d 577, 408 N.Y.S.2d 285, 286 (1978), construing a similar statutory provision, wherein the court stated "that the Governor may well have decided to extradite the defendant anyway, does not justify circumventing the Governor's discretionary judgment."
It is immaterial that Mississippi has not adopted the Uniform Act. See 11 U.L.A. (Supp. 1986) at 22. The laws of the asylum state apply, and must be satisfied. State v. Liakas, 165 Neb. 503, 86 N.W.2d 373 (1957). While it is true that the governor's actions may be cloaked to some degree with a presumption of correctness, the findings inherent in the issuance of a governor's warrant are not final and conclusive but may be rebutted by evidence to the contrary. Ex parte Rubens, 73 Ariz. 101, 238 P.2d 402, cert. denied, 344 U.S. 840, 73 S.Ct. 50, 97 L.Ed. 653 (1952). Dixon has presented unrefuted evidence that he is not a "fugitive" in the traditional sense. On the other hand, we find nothing in the documents supporting Mississippi's request for extradition to indicate that our governor, faced with Mississippi's request for Dixon's return, was apprised of the fact that Dixon had not voluntarily absented himself from Mississippi. Thus, we cannot *1198 presume that the governor's decision to honor Mississippi's request was simply an exercise of his discretion. Cf., People ex rel. Brunner v. Dominy. Accordingly, the order denying Dixon's petition for writ of habeas corpus is reversed with directions that Dixon be discharged without prejudice to any other proceedings the demanding state may be advised to take. People ex rel. Bernheim v. Warden of the House of Detention for Men.
GRIMES, A.C.J., and FRANK and SANDERLIN, JJ., concur.